[Civ. No. 1635. Third Appellate District.—April 21, 1917.]

MORRIS BROOKE, Respondent, v. T. L. QUIGLEY, Appellant.

CONTRACT—COMMISSION FOR PURCHASING LAND—FRACTIONAL INTEREST IN PROPERTY—TRUST—SPECIFIC PERFORMANCE.—An agent who consummated a purchase of a tract of land under an agreement that he should receive as his commission a one-sixth interest in the property, cannot, where the purchaser makes a sale of a portion of the property, which portion was of the value of one-half of the whole tract, have a trust declared in his favor in an undivided one-third interest in the part remaining unsold, or specific performance decreed to that effect, as under such an agreement he is only entitled to a decree for a one-sixth undivided interest of the whole tract.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

M. E. Sanborn, and Butler & Swisler, for Appellant.

W. H. Carlin, for Respondent.

BURNETT, J.—The suit was for the recovery of a certain interest in real property which was alleged to be held in trust by the defendant for the plaintiff. The cause of action is based upon a contract between the parties whereby respondent acted as the agent for appellant in the purchase of a tract of land from one Edward A. Noyes under an agreement that he should receive as his commission a one-sixth in-

terest in said real property. The contract is set out in the complaint, and it is further alleged that in accordance therewith respondent secured the sale, and the deed was made to appellant as the sole grantee; that subsequently appellant sold a portion of said real estate, and that said portion was of the value of one-half of the whole tract. The prayer was for judgment decreeing respondent to be the owner of an undivided one-third interest in the part remaining unsold, and that appellant held it in trust for respondent, and that he be required to perform specifically his contract and execute a deed to respondent of the one-third interest. The answer set up a failure on plaintiff's part to perform his contract, concealment of knowledge and information from defendant by plaintiff, and also misrepresentations by the agent to the principal, constituting a violation of his duties and obligations as such agent. It was also alleged that the contract was not sufficiently specific, comprehensive, or definite to admit of specific performance, and that the alleged services did not constitute a fair, just, and adequate consideration or any consideration whatever for plaintiff's demand. By counterclaim and cross-complaint defendant also sought to recover the sum of $2,167.60 which he had paid to plaintiff before he had discovered the said violation of his duties as agent and the failure to render the services contracted for. It may be stated that this payment was made by reason of a certain reduction in the cash payment required of appellant at the time of the execution of the deed to him. The court's conclusion harmonized with the view of plaintiff, and its judgment determined and decreed "that plaintiff is the owner in fee and entitled to the possession of an undivided $\frac{25333}{114795}$ interest in and to those certain tracts or parcels of land situate and being in the county of Sutter (describing them). Subject, however, to the payment by plaintiff of the sum of $21,166.66 on or before the first day of January, 1921, with interest thereon from the date of the entry of this decree at six per cent per annum, the same being a portion of the last payment required to be made in and by that certain promissory note executed by defendant T. L. Quigley to E. A. Noyes and secured by a mortgage of record." Then follows a copy of said note and the judgment continues: "It is further here ordered, adjudged and decreed that within ten days from the date of the rendition and entry of this decree, the defendant T. L.

Quigley execute his said trust by the execution and delivery to plaintiff of a good and sufficient deed of grant, granting and transferring to him said $\frac{25333}{114795}$ interest in and to said lands and premises hereinbefore described subject to the payment of said sum of $21,166.66 on or before the first day of January, 1921, with interest from the date of the rendition and entry of this decree at six per cent per annum as hereinbefore set forth; and that in the event of the failure or refusal of said defendant T. L. Quigley to execute said deed within the time and in the form and substance as herein directed, the sheriff of the county of Sutter, state of California, is hereby appointed for such purpose and directed to make, acknowledge, execute and deliver said deed in the place and stead of said defendant, T. L. Quigley.''

We now proceed to the consideration of the principal contentions of appellant for a reversal of the judgment.

While appellant presents various points for our determination, he declares in his brief that the primary reason why appellant resists the demands of respondent is because of the knowledge obtained by appellant that respondent, while pretending otherwise, in fact failed to render the services as broker which in law and good conscience he was bound to render before he could rightfully claim compensation. In fact, appellant testified to the agreement substantially as did respondent, and declared that he intended to execute it until he learned ''that he had not delivered or given me the service I expected, that I was paying for.'' The particular remissness of the agent is designated as ''fraudulent concealment,'' ''nonperformance and delay,'' ''positive acts of fraud,'' and ''misrepresentations.'' Under the first are specified: '' (a) He did not inform appellant that he had knowledge of the Phipps-Beere option; (b) He did not inform appellant of the terms of that option or the price thereunder at which the land could be purchased, viz., $28 per acre; (c) he did not inform appellant during the time he was pretending to act as the confidential agent of appellant, that he at the same time was acting as the agent for Noyes and endeavoring to obtain for the land the highest possible price,'' and that he advised Noyes to insist upon a cash payment of twenty-five thousand dollars instead of twelve thousand five hundred dollars which Noyes had consented to accept until a flaw in the title was removed.

In the second category are enumerated his omission to avail himself of the opportunity to purchase the land at the price of $28 per acre, through said Phipps-Beere option, and his failure to submit to Noyes the various offers for the land made by appellant. The "positive acts of fraud" are covered by the foregoing, and the "misrepresentations" relate to a letter and telegram sent by respondent to appellant on December 29, 1912, to the effect that the net price for the land was $30 per acre and that it had never been offered for less.

The constant and undivided fidelity of the agent to the interest of the principal is, of course, demanded by the provisions of the statute, the decisions of the courts, and the recognized principles of honorable dealing, and if we had to accept the recital of appellant as embodying the established facts of the case we should not hesitate to say that respondent was recreant to his trust and was not entitled to any consideration in a court of justice. But the foundation of appellant's claim is found in the testimony offered in his own behalf. It may be admitted that, from the record, his showing appears to be not destitute of persuasive force, but the apparently inculpatory circumstances are negatived by the denials and explanations of the plaintiff himself. As far as it was inconsistent with the evidence of appellant the court undoubtedly accepted and acted upon the testimony of respondent, and we can do no less under the familiar rule. In view of the insistent assertions of appellant as to these important circumstances, we have been at pains to read carefully the entire transcript, and we find therein legal justification for the conclusion of the trial court that respondent acted in good faith in his dealings with appellant. We need not quote from the record, but we deem it sufficient to say that respondent testified that he knew of said option and told Quigley about it, but was informed that it called for $30 per acre, that he was told by Noyes that the land had never been offered for less, that he did not advise Noyes to insist upon a payment of twenty-five thousand dollars instead of twelve thousand five hundred dollars, that he did submit to Noyes the various offers made by appellant, and that he did not know at any time while acting as the agent of appellant that the land could be bought for less than what it was purchased for. As to any effort made to sell the property to another party, he gave an explanation capable of reconciliation with

an honest attitude toward appellant. He declared that Mr. Quigley said to him: "I may do business down here, but if you have any other prospect of selling that property and doing business with Mr. Noyes go ahead and do business." Respondent testified that he had an arrangement with Mr. Quigley to that effect, and he did the best he could for him, but he had the privilege of disposing of the property elsewhere if the opportunity was offered. It seems that by agreement with Noyes the price for any other purchaser was one hundred and seventy-five thousand dollars, but the owner and respondent were anxious to favor appellant, and if a sale were made to him it would be for about twenty-five thousand dollars less. Respondent gives his reasons for believing that this scheme was in the interest of Quigley and we cannot say that his conduct was inconsistent with good faith. He was, no doubt, anxious to obtain a commission, but in that respect he was probably like the average individual, and it cannot be said that he was not justified in what he did. Mr. Quigley was himself a real estate agent and had, no doubt, a fellow-feeling for the craft and he was willing to give Mr. Brooke as much leeway as possible. Indeed, appellant seemed to rely entirely upon his own judgment as to the value of the land, he determined what he would pay for it, and his engagement was with Brooke that the latter would endeavor to secure it for him at that price but with the privilege of selling it for more to another purchaser.

It is contended with much learning that the theory of a trust upon which respondent relies is utterly untenable. The criticism begins with the complaint itself. After setting out the agreement between the parties, as we have hereinbefore stated, and the negotiations culminating in a sale, carried on by plaintiff with Mr. Noyes, the complaint proceeds, "and thereafter in accordance with said negotiations carried on on the part of plaintiff in accordance with said agreement a deed of grant, bargain, and sale was, on or about the 5th day of December, 1913, executed by said Edward A. Noyes to said defendant T. L. Quigley, granting and transferring to said Quigley the above-described lands and premises. Shortly before the execution and delivery of said deed, plaintiff learned that the deed was to be executed by said Noyes and he requested and demanded of said defendant Quigley that in the execution of said deed, plaintiff should be named as a

grantee therein to the extent of an undivided one-sixth interest, and said defendant Quigley as grantee therein to the extent of the remaining five-sixths interest therein in accordance with said agreement as aforesaid; that, however, defendant Quigley refused to permit plaintiff to be named in said deed," etc. It is declared that the complaint is thus inconsistent and self-destructive. The particular point is that in one breath plaintiff claims that the conveyance to Quigley was in accordance with the agreement between the parties and, in the next, that it was in violation of said agreement. In other words, assuming that a trust existed, it is alleged both that it was and that it was not executed. We think, however, that this criticism involves rather a matter of uncertainty than of vital infirmity. Respondent admits that the complaint was hurriedly and somewhat carelessly drawn, and it is contended that what was meant is that the sale was secured through the efforts of plaintiff in accordance with the agreement of plaintiff and defendant, but that the deed was executed contrary to said agreement in the respect indicated. There was no special demurrer and the case was tried upon the theory that the cause of action was properly set forth, and defendant certainly suffered no prejudice by reason of said defective phraseology.

Appellant, however, with more confidence, apparently, urges the objection that the evidence fails to disclose any trust at all that can be legally enforced. There is an interesting discussion in the brief of the various kinds of trusts that are recognized by the authorities, and special attention is devoted to the consideration of a *resulting* trust of which respondent contends this is an example. Therein are recited the different conditions upon and according to which such a trust may arise, and it is claimed that only one of these conditions could possibly apply here, and that is "when a purchaser of an estate pays the purchase money or some portion thereof and takes the title in the name of a third person." But it is insisted that such is not the case here for the reason that no part of the consideration for the conveyance passed from respondent to Noyes, the owner of the property. In support of the position certain authorities are cited, including Pomeroy's Equity Jurisprudence, section 1037, *Woodside* v. *Hewel*, 109 Cal. 481, 485, [42 Pac. 152], and *Los Angeles etc. Dev. Co.* v. *Occidental Oil Co.*, 144 Cal. 528, 534, [78 Pac. 25]. In the

first it is said: "The fundamental idea of such a trust is that equity considers that the beneficial interest follows the consideration and attaches to the party from whom the consideration comes. But in order that this effect may be produced it is absolutely indispensable that the payment should be actually made by the beneficiary B or that an absolute obligation to pay should be incurred by him as a part of the original transaction of purchase, at or before the time of the conveyance."

In the Woodside case, *supra,* the doctrine is therein stated: "The resulting trust, not within the statute of frauds, and which may be shown without writing, is when the purchase is made with the proper moneys of the *cestui que trust,* and the deed not taken in his name. The trust results from the original transaction at the time it takes place, and at no other time, and it is founded on the actual payment of money, and on no other ground."

And in the Los Angeles case, *supra,* it was declared: "Efforts as the promoter or agent of the parties, and the traveling or other expense incurred in bringing about this transfer, cannot be held to perform even a part of the consideration for the transfer."

It is therefore urged, in opposition to the claim that respondent's share of the consideration was his efforts in bringing about the conveyance, that, since no part of this passed to the grantor, or furnished any part of the consideration for the conveyance, it cannot be regarded as sufficient to create a resulting trust. However, we are not greatly concerned with the definition of words or in what category the alleged trust falls, but the vital inquiry, of course, is whether there was evidence of the creation of a legal obligation on the part of appellant to convey said one-sixth interest to respondent.

The written correspondence between the parties would seem to answer this inquiry. We can see no reason why it may not be held that thereby what is known as an express trust was created within the purview of sections 852 and 857 of the Civil Code. (*Estate of Hinckley,* 58 Cal. 457; *Hellman* v. *McWilliams,* 70 Cal. 449, [11 Pac. 659], and other decisions.) In the Hinckley case it was said: "The code does not in terms declare the distinction between express and implied or resulting trusts. But section 857 declares that 'express trusts' in relation to real property may be created for certain purposes.

Express trusts are put in opposition to those which are implied or resulting—the latter being such as exist 'by operation of law,' and the former such as are created or declared by instrument in writing.'' It is true that if the said letter of December 23d were the only writing in relation to the matter it could hardly be held sufficiently definite and comprehensive to be enforced, but its deficiency was supplied in the other correspondence between the parties. There can be no mistake as to what was intended. Indeed, as we have seen, appellant on the witness-stand admitted the agreement as claimed by respondent, but sought to justify his refusal to convey by reason of said misconduct.

But apart from the foregoing, the action may be upheld as one for specific performance. As to this appellant complains that there is no allegation in the complaint that the consideration was equitable and adequate. The issue, however, was tendered by the answer, evidence was received in relation to it, and it was found by the court in favor of plaintiff. It is immaterial, therefore, whether we regard the action as one for specific performance or to enforce a trust. In either event there is sufficient foundation for a judgment in favor of plaintiff.

But regarded in either aspect, the particular judgment rendered, in our opinion, was not warranted by the facts. If a trust existed it reached the whole tract and fastened itself upon every portion of it. It was a trust to convey an undivided one-sixth interest in and to said land. It could not be executed by the conveyance of a larger proportion of a part of the land, at least without the consent of the defendant. The same would be true as to specific performance. Plaintiff must rely upon his contract for the conveyance of one-sixth of the entire estate. As to the part disposed of by appellant, respondent must rely upon a judgment for damages. This would not require, of course, a separate action but can be included in the same complaint. The matter is treated at length in *Lathrop* v. *Bampton,* 31 Cal. 17, 22, [89 Am. Dec. 141], wherein is quoted with approval the following from Mr. Justice Lewis in *Thompson's Appeal,* 22 Pa. St. 16, 17: ''Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held, in its new form, liable to the rights of the *cestui que trust.* No change of its state and form can divest it of such

trust.   So long as it can be identified either as the original property of the *cestui que trust,* or as the product of it, equity will follow it; and the right of reclamation attaches to it until detached by the superior equity of a *bona fide* purchaser for a valuable consideration without notice.   But the right of pursuing it fails when the means of ascertainment fail.''   In that case all the trust property was disposed of, but the principle is the same where only a part of it remains.   Here one thousand one hundred acres of the specific property covered by the trust is gone ''and nothing is left to the *cestui que trust* except a naked claim for damages generally, on account of the breach,'' as far as that particular tract is concerned.

In section 843 of Perry on Trusts it is said: ''If the *cestui que trust* is unable to trace the trust fund into the hands of other persons or into the hands of third persons other than *bona fide* holders for value, or into other property in the hands of the trustee, or if he elects not to do so, he may proceed against the trustee personally.''

It may be said, also, as before suggested, that if we regard the case as one for specific performance, to allow plaintiff to recover one-fourth of the residue of the property instead of one-sixth of the whole tract, would be to make for the parties a contract that was never in their minds.   (*Grey* v. *Tubbs,* 43 Cal. 359; *Magee* v. *McManus,* 70 Cal. 553, [12 Pac. 451].)

Another consideration is worth mentioning: Under plaintiff's theory he was entitled to a deed of one-sixth of the real property subject to his proportion of the indebtedness.   As we have seen, there was a cash payment and a note and mortgage given for the balance.   The note called for the payment of $98,465.55, with interest at the rate of six per cent per annum.   As to the principal, it was provided that $10,465.55 should be paid on or before ninety days from the date of the note, ten thousand dollars on or before January 20, 1916, and the balance, to wit, the sum of seventy-eight thousand dollars, on or before January 1, 1921.   According to the decree plaintiff was awarded the fee and the use and possession of nearly one-fourth of the residue of the property without being required to make any payment until the 1st of January, 1921. He could thus enjoy the use of the property for nearly six years and then abandon it without the payment of anything. That he was favored in this manner arises from the circum-

stance that appellant had sold a portion of it and been in the exclusive possession of the residue ever since the purchase. The judgment may not have been inequitable, but we are left to conjecture as to the extent of the damage done to plaintiff by his exclusion from the enjoyment of his portion of the property. We think there should be an accounting between the parties that it may be determined how much is due plaintiff for the said sale, and how much for the use of the property, and a decree entered for the residue in accordance with the terms of the contract, if the court is still of the opinion that plaintiff should recover.

The judgment is reversed.

Chipman, P. J., and Hart, J., concurred.