[L. A. No. 1205. In Bank.—August 30, 1904.]

## LOS ANGELES AND BAKERSFIELD OIL AND DE-VELOPMENT COMPANY OF ARIZONA, Appellant, v. OCCIDENTAL OIL COMPANY, Respondent.

SPECIFIC PERFORMANCE—CONTRACT FOR OIL-LANDS—PERSONAL SERVICES IN DEVELOPMENT.—Where the main object and principal consideration of a contract for an interest in oil-lands made by the defendant with the plaintiff was to secure the development of oil therein, involving the performance of personal labor and services on the part of the plaintiff, which the plaintiff corporation has not performed on its part, and cannot be compelled to perform, the plaintiff

cannot maintain an action for a specific performance of the contract against the defendant.

Id.—Resulting Trust—Consideration.—A resulting trust cannot be enforced against the defendant in respect of oil-lands where the consideration thereof proceeded from the defendant, and not from the plaintiff. The efforts of the promoter of the plaintiff corporation as agent of the parties, and the traveling and other expenses incurred by him in bringing about a transfer to the defendant, cannot be held to form part of the consideration of the transfer.

Id.—Issuance of Stock—Speculative Value—Trust Interest not Enforceable.—The issuance of stock by the plaintiff corporation to the defendant, which stock is only of a speculative value, cannot form the basis of a resulting trust. A trust interest that cannot be measured as to its value or as to its fractional dimensions, as compared with the whole tract, divided or undivided, cannot be enforced.

Id.—Inadequate Consideration—Unreasonable Contract.—An agreement to convey which is not supported by an adequate consideration, and which is not as to the locators of mining ground reasonable or just, cannot be enforced. [*Per* Beatty, C. J.]

APPEAL from a judgment of the Superior Court of Kern County. J. M. Mahon, Judge.

The facts are stated in the opinion.

T. M. McNamara, Goodrich & McCutchen, and Calvin Edgerton, for Appellant.

A. I. McCormick, and J. W. Ahern, for Respondent.

GRAY, C.—This is an action to have it declared that defendant holds certain real estate in trust for and to enforce the specific performance of a contract to convey the same to plaintiff. The defendant had judgment on a demurrer to the complaint, and plaintiff appeals. The question for decision here is, Does the complaint state a case for the equitable interposition of the court?

The property in dispute consists of three different pieces of public land in Kern County located as oil-land under the laws of the United States, and upon which, as appears from the complaint, no oil had been discovered at the date of the alleged contract.

The complaint alleges that such title as was required by such locations was "vested in, or owned or under the absolute

control of, a combination or association of persons," and that this association was represented and wholly controlled by five persons, whose names are given. An agreement is alleged to have been entered into between Charles M. Martin, the promoter and organizer of the plaintiff corporation, and said five persons, as follows: Said five persons agreed that they would place in escrow in the Kern Valley Bank a quit-claim deed conveying to Martin all the interest of the locators in said lands. Martin agreed to organize a corporation and to cause to be transferred and delivered to a trustee to be designated by said five persons one fourth of the entire capital stock of said corporation in payment for said lands. It was further agreed that said corporation "should have immediate possession of said lands and proceed with the development thereof to the end that it might be determined whether oil existed thereunder, and that said deed should be delivered when oil was struck on said lands or any part thereof, or that said deed should be delivered at any time after the issuance of said stock to said trustees." The complaint further alleges that the object and purpose of said persons, as stated and declared by them, in making the said agreement with said Martin was, that by transferring a portion of the lands so located and acquired upon the understanding that they should be developed by the transferee, the said association of persons would secure the development of said territory without expense to themselves, and also with the purpose and object of acquiring the capital stock of said corporation so to be organized by said Martin for its specula-tive value, and that there was an understanding between such persons and said Martin that in forming such corporation he should associate together men of financial responsibility as incorporators and directors thereof, so that said stock would have a speculative value in the market; that Martin thereafter organized the plaintiff corporation according to his said agreement, using men therein of "known probity, business ability, and financial responsibility" as directors and incorporators; that he communicated the names of those men to said association of persons, and the latter "expressed them-selves as more than satisfied with the character and standing of said incorporators and directors"; that the sole object of forming this corporation was to comply with the said agree-

ment, and the only property intended to be held by said corporation was the oil property covered by said agreement, and of all this the said incorporators were fully advised and entered into the incorporation relying thereon. It is also alleged that said combination or association of persons were acting as the promoters of the defendant corporation in making the agreements aforesaid, and that in furtherance of their previous agreement they promoted and caused to be organized the defendant corporation for the purpose of carrying out the foregoing agreement, and that the incorporators, officers, and directors thereof were composed of said persons and their immediate relatives, "and that the management and control of affairs of said corporation defendant was at all the times herein mentioned" in the hands of the said five persons mentioned in the complaint by name.

The complaint further sets forth that a part of the agreement was, that the land should be free and clear of all claims and encumbrances, so that a quitclaim deed from the defendant corporation (which corporation had succeeded to whatever title had been acquired by the said association of persons) "should pass all the interest which was or could be acquired by reason of the location of said lands as aforesaid"; that Martin procured abstracts as to the title of said land, and it was ascertained that a second mining location had been made some two days later than the location hereinbefore referred to by G. W. McCutchen et al. on one of the tracts consisting of one hundred and sixty acres in a certain section 2, and the attorneys examining said abstract gave it as their opinion that in the case of these conflicting applications the first discoverer of oil would get good title to the land, notwithstanding the prior location. Defects in the title to several other tracts were also discovered.

The complaint further alleges that Martin was instructed by said defendant and said persons to do whatever was necessary to clear the said titles, and accordingly Martin proceeded from Los Angeles to Bakersfield, and in company with Batz, the latter acting as agent for defendant, they together arranged a compromise of the conflicting claims of the defendant and said McCutchen et al. in said section 2. This arrangement was, that McCutchen et al. should convey eighty acres of

the disputed quarter of section 2 to said Batz in trust for said Martin and defendant; "and that said defendant should convey to certain persons named by said McCutchen et al. a like eighty acres of said quarter-section; and that said Martin should as an additional consideration agree to issue or cause to be issued to the said McCutchen et al. 2,000 shares of the capital stock of the plaintiff corporation." That Martin did so agree in writing, and that both Martin and plaintiff corporation are able, ready, and willing to comply with the said agreement. Thereupon said Batz, by consent of Martin, transferred by deed of quitclaim all the interest which he had acquired in said lands in said section 2 to the defendant corporation, but upon the express understanding "that said defendant should convey to plaintiff a one-half interest in said 80 acres of said section 2." That Martin, to secure a quitclaim deed from McCutchen et al., sent agents at his own expense to various points, "and at his own expense secured from each person his signature to said deed." It is also alleged that Martin procured the correction of the defects in the title to the property in other respects not necessary to be here stated.

The foregoing statement contains only a part of a very long complaint, but it is deemed sufficient for the decision of the appeal.

It is clear to us that the complaint does not state a case for specific performance; and this for several reasons, only one of which we will state. The main object of the contract was to secure the development of the land to the end that it might be determined whether it contained oil, and this was the principal consideration that induced the defendant to make such contract. And the performance of this part of the contract on the part of plaintiff cannot be enforced in a court of equity, because it involves the performance of personal labor and services. Hence there is a want of mutuality as to the remedy sought to be enforced. Equity will not enforce specific performance of a contract as against the defendant, unless the plaintiff has performed or can be compelled specifically to perform his side of the contract. (*Stanton* v. *Singleton*, 126 Cal. 657.) Under this rule the contract cannot be divided up into "independent covenants" and "subsequent conditions" for the purpose of enforcing a part of

it and leaving the parties to some subsequent remedy as to the rest of it, but the whole contract, including conditions subsequent as well as precedent, must be kept in view, for our statute says, "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, *everything* to which the former is entitled *under the same obligation,* either completely or nearly so, together with full compensation for any want of entire performance." (Civ. Code, sec. 3386.)

The forming of the corporation and the issuance of one quarter of the stock to the defendant was but a small part of the consideration to be performed by plaintiff. The contract was not "nearly" performed on plaintiff's part by. the forming of this corporation and transfer of a quarter of the stock. The main object, purpose, and consideration of the contract, the development of the land for oil, was yet to be performed by plaintiff. And though plaintiff may be entitled at law to a conveyance and to be let into possession before he performs this part of the consideration, yet, as this part of the consideration has not been performed, and its performance cannot in equity be specifically enforced, no enforcement of any part of the contract can be had. This principle is clearly illustrated and the reasons plainly given in *Lattin* v. *Hazard,* 91 Cal. 87. To the same effect is the more recent case of *Moore* v. *Tuohy,* 142 Cal. 342.

But in his closing brief appellant urges that the facts stated in the latter part of the complaint establish a resulting trust in the land. A resulting trust arises "when a transfer of real property is made to one person, and the consideration thereof is paid by or for another." (Civ. Code, sec. 853.) The main consideration of the transfer to the defendant of the outstanding claim to one eighty-acre tract of section 2 was the transfer of defendant's interest in the other eighty acres of the same section. Martin's efforts as the promoter or agent of the parties, and the traveling and other expense he incurred in bringing about this transfer, cannot be held to form even a part of the consideration for the alleged transfer. This consideration proceeded not from Martin or the plaintiff, but from defendant, and the conveyance

being to the same party from which the consideration emanated there can be no resulting trust in favor of another. If it be admitted that the agreement to issue to McCutchen et al. two thousand shares of the stock of plaintiff constituted a part of the consideration for this transfer, how are we to determine what interest in trust this would carry with it in the property conveyed? No value is assigned to this stock; indeed, the complaint clearly recognizes that it was only of "speculative value." The law recognizes actual values or market values, but, so far as we can learn, has no dealings with speculative values, and equity follows the law. Besides, under the doctrine of resulting trusts, it is not the interest in property orally agreed to be conveyed that will be looked to (agreed trusts come under the head of express trusts, and must be created by a writing), but a court of equity will regard only that interest or property as held by virtue of a resulting trust which is conveyed to one by virtue of the consideration emanating from another. What interest was conveyed to defendant in this eighty-acre tract by McCutchen et al.? Certainly it cannot be contended that defendant holds under a resulting trust any greater or different interest from that which it obtained from McCutchen et al. These latter parties had only a second location on mineral land upon which no mineral had been discovered. The defendant was already the successor to all the claim that the prior locators had in the same land. Certainly no resulting trust could attach to this prior location. It is impossible to enforce a trust interest that cannot be measured as to its value, or as to its fractional dimensions as compared with the whole tract, divided or undivided. The agreement to convey one half of the eighty acres referred to cannot be specifically enforced, for the same reasons already given, as limiting the power of the court as to the enforcement of the original contract set out in the complaint.

As to the other tracts, it does not appear that any consideration whatever proceeded from Martin or from plaintiff for any interest therein conveyed to defendant. And hence the doctrine of implied or resulting trusts can in no way apply to the transactions had in relation thereto.

Without taking time to critically examine the other points urged against the complaint, we deem it sufficient to say

that for the reasons stated the complaint fails to state a cause of action, and we advise that the judgment be affirmed.

Harrison, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

McFarland. J., Henshaw, J., Van Dyke, J.

BEATTY, C. J., concurring.—I concur in the judgment of affirmance upon the ground that the agreement to convey was not supported by an adequate consideration, and that the contract as pleaded was not, as to the locators of the mining ground, reasonable or just. (Civ. Code, sec. 3391.) The first thing to be done was the deposit in escrow of a deed conveying all their title to Martin, and this deed was to be delivered, thereby investing Martin with the complete title and power of alienation, upon the delivery by him to the trustee of the locators of one quarter of the shares of a corporation to be formed. The contract contained no stipulation binding Martin to convey the claims to the corporation, and provided no effective means of binding the corporation to make a thorough development of the ground. On this point it was extremely vague and indefinite. It was not provided that any condition subsequent should be expressed in the deed, and the only condition precedent to its delivery was the issuance to a trustee of the locators of one quarter of the shares of a corporation, with no capital except its stock subscriptions, and with no guaranty that the remaining three fourths of the shares would be subscribed. It is not alleged in the complaint that any definite number of shares in the corporation have been subscribed, and it is entirely consistent with the case as stated that the one quarter of the stock issued to the trustee of the locators is practically all that ever will be issued. Besides this, the contract did not provide that the stock issued to the locators should be issued as fully paid, or unassessable in whole or in part, and the complaint does not allege that it was to be held on conditions in any respect more favorable than those affecting the stock of other subscribers. So that if these locations should now be conveyed to the corporation, as assignee of Martin, the locators would

be liable as stockholders for a share of the expense of development exactly proportioned to their interest in the ground—a result utterly at variance with the alleged purpose of the locators in entering into the contract.

Upon this ground, irrespective of others, I concur in the judgment.