COMMERCIAL CREDIT CORPORATION, Plaintiff, *v.* THIRD AND LAFAYETTE STREETS GARAGE, Defendant.

Supreme Court, Erie County, April 7, 1928.

Sales — conditional sale — action for rescission of assignment of contract of conditional sale on ground of fraud — defendant sold automobile on conditional sales agreement and took secured promissory note as down payment — assignment contained clause that down payment was in cash — clause does not justify rescission — proof fails to show plaintiff suffered any damage — complaint dismissed.

The complaint in this action for the rescission of an assignment of a contract of conditional sale on the ground of fraud must be dismissed where it appears that the defendant, on selling an automobile to a third party on a conditional sales agreement, took a secured promissory note as down payment and then assigned the agreement to plaintiff by an instrument containing a clause that the down payment made by the purchaser of the automobile was in cash, since the most that can be claimed by plaintiff is a misstatement as to the method employed in making the payment and not as to the fact of payment.

Furthermore, plaintiff has failed to show any damage in spite of the requirement that to maintain an action for fraud plaintiff must allege and prove injury by the fraud charged.

ACTION for rescission of assignment of contract of conditional sale on the ground of fraud.

*Buecking & Lengbusch,* for the plaintiff.

*Ernest Cawcroft,* for the defendant.

CHARLES B. WHEELER, Official Referee. The defendant is a dealer in automobiles, and on the 4th of June, 1926, sold to one Mrs. Susan Chamberlain and Walter L. Chamberlain an automobile at the agreed price of $1,685.56. Of this price $517.82 was to be paid in cash and the balance of $1,167.74 was secured by a conditional sales contract which was executed by the purchaser in and by which the title to the car was to remain in the seller until the last of twelve monthly installments of $97.12 was paid. In case of default in such payments the seller was authorized to take

Comm. Credit Corp. *v.* Third & Lafayette Sts. Garage. 787

Misc. 786]                    Supreme Court, April, 1928.

possession of and sell the car. The contract contained other provisions unnecessary here to state. In this conditional contract was stated the purchase price of the car, and a memorandum of the payments on it, to wit, " Cash on or before delivery $517.82." " Allowance on Trade none." " Total down payment $517.82." " Balance $1,167.74." The defendant assigned this contract to the plaintiff by an instrument containing the following clause: " Undersigned warrants that the down payment made by the purchaser as stated in the contract was in cash and not its equivalent, unless otherwise mentioned in the contract."

At the time of the sale and delivery of the automobile the Chamberlains delivered to the defendant their joint and several promissory note for $517.82 payable on demand, and at the same time delivered to the defendant a written instrument by which they assigned to the defendant as security for the payment of said demand note their equity and interest in a certain estate, and directed the payment of said note from said estate, and said note and assignment were filed with the National Chautauqua County Bank which was the executor of said estate.

The evidence is that said estate was solvent, and the amount coming to the Chamberlains from it more than sufficient to pay said note, but the note was not immediately paid owing to the fact said estate was in process of judicial settlement. However, on the 20th day of July, 1927, the executor's accounts having been passed and settled by the surrogate, the note in question was in fact paid by the estate to the defendants.

The installments agreed to be paid and secured by the conditional sales contract and assigned to the plaintiff were not met or paid by the purchasers of the car, and the plaintiff has never instituted any action against the Chamberlains to recover the sum or sums due and payable under said contract.

The plaintiff has sought to rescind the assignment of the conditional contract to it by the defendant, and to recover in this action the amount paid for it on the ground that a false and fraudulent statement was made by the defendant which induced the purchase of the conditional sales contract in that in fact no cash was paid by the Chamberlains at the time of the sale, and the question for the referee to decide is whether the facts above recited justify such rescission and a recovery of the amount paid by the plaintiff for such assignment.

The referee cannot believe the defendant intentionally made any misstatement of facts. It is not unusual for dealers in automobiles in selling cars to take at a price old and used cars which are turned in as part payment of a new car purchased. The blank

used shows this to be the fact for there is printed in it the words under the heading of "*Payments*" the words "*Allowance in Trade,*" and in the instrument in this case is answered "none," which was the truth.

It is evident the defendant regarded the sale to the Chamberlains as a cash transaction, which in substance it was. It is true no currency was paid at the time of the sale, but an order and an assignment on the Chamberlain estate were given to pay the amount of the down payment on the automobile. This order was perfectly good, and was subsequently paid in cash to the defendant by the estate. It was in effect the equivalent of cash and perhaps justified the defendant in stating the down payment was made "in cash." It is quite technical to assert that the statement was fraudulent. The defendant evidently believed it was to be regarded as a cash transaction and it was justified in so stating. The word "cash" is not always limited to money. Under certain circumstances it may be deemed to describe other things. Webster in his Dictionary (New International, 1925 ed.) defines "Cash" as follows:

"Com. *a* Money, esp. ready money; strictly, coin or specie, but also, less strictly, bank notes, drafts, bonds, or commercial paper easily convertible into money. *b* Money or its equivalent paid immediately or promptly after purchasing * * *. In mercantile dealings 'cash' usually permits payment in 10 or 30 days."

The Cyclopedia of Law and Procedure, with many citations, adopts the same comprehensive interpretation. Cash is a term of wider application than money. "Payment can be made other than in money if the contract so provides or the creditor consents thereto or acquiesces therein." (30 Cyc. 1187.)

"The word 'money' may be extended to bank notes, when they are known and approved of, and used in the market as cash."

Daniel's work on Negotiable Instruments (Vol. 2 [5th ed.], 717) treats a certificate of deposit as cash although it must remain on deposit for a stated time. He declares that it need not be to the order or by check, and that a payment in money would include United States legal tender, specie and bank notes, and a payment in cash will include payment by check that is honored.

However, whatever may be said or urged against this view, the referee is unable to see how the plaintiff has in any way been damaged by the representation or misrepresentation that the $517.82 was paid in cash. The order was paid, and the cash was received at the time the sale was made. The means of obtaining the cash was given, and the buyers parted with the right to obtain the amount themselves from the Chamberlain estate. The sum of

$517.82 in that estate became the property of the defendant. We are unable to see how the method of paying this $517.82 in the least in any way impaired or affected the value of the conditional sales contract turned over to the plaintiff, or how the means employed by the Chamberlains to make the down payment in any way changed their financial responsibility or standing or credit.

This depended entirely on their ability to meet the future payments called for in their conditional sales contract, and was not lessened one bit by the giving of the order on the estate. The security of the plaintiff was in no way impaired. The plaintiff still held and owned the contract. It could pursue all the remedies and rights given by it. It was in no worse position by reason of the order. All its rights were preserved. Probably the statement as to payments made, and how paid, was incorporated into the conditional sales contract for the purpose of advising contemplating purchasers of the contract just how much equity the buyer of the car had in it, whether sufficient to warrant the belief the purchaser would protect that equity by paying installments to come due.

It is a general rule of law that to maintain an action for fraud the plaintiff must allege and prove he has been injured by the fraud he charges. (*Urtz* v. *N. Y. C. & H. R. R. R. Co.*, 202 N. Y. 170, 173; *Taylor* v. *Guest*, 58 id. 262; *Ettlinger* v. *Weil*, 184 id. 179.)

The very most that can be claimed by the plaintiff is a misstatement as to the method employed in making the payment of $517.82, not as to the fact of its payment. Another rule of law governing cases of this kind is that the representation made must be a material one. (20 Cyc. 23, and cases cited, among others being *Dawe* v. *Morris*, 149 Mass. 188.)

As we have already stated in substance, we are unable to see that the method of payment is material so long as the payment was in fact made by the turning over of a fund to make it.

We think the plaintiff has failed to show any damage, and this action must fail.

Suppose, instead of seeking to rescind and recover the price paid for the assignment of the conditional sales contract, the plaintiff had sued on the warranty in the dealer's assignment, whereby the defendant " Warrants that the down payment made by the purchaser as stated in the contract was in cash and not its equivalent." Could in such an action any damages be recovered under the circumstances of this case? We think not. We are of the opinion the plaintiff's complaint must be dismissed.

So ordered.