THOMAS P. SIDWELL, PLAINTIFF AND APPELLANT, *v.* THE NEW MINE SAPPHIRE SYNDICATE, ET AL., DEFENDANTS AND RESPONDENTS.

No. 9427.
Submitted April 11, 1956. Decided May 11, 1956.
Rehearing Denied May 25, 1956.
297 Pac. (2d) 299.

Mr. Charles Davidson, Great Falls, for appellant.
Messrs. Hoffman & Cure, Great Falls, for respondents.
Mr. Davidson and Mr. Henry B. Hoffman argued orally.

MR. CHIEF JUSTICE ADAIR:

Suit in equity for the specific performance of a written agreement for the sale of mining claims and other property.

The defendant, The New Mine Sapphire Syndicate, is a corporation incorporated under the laws of the State of Montana. Its president R. H. Keller, its secretary George Pope, and its board of directors all reside in London, England.

*Agreement.* On May 24, 1950, the New Mine Sapphire Syndicate, a Montana corporation having its principal place of business in Stanford, Montana, vendor, and Thomas P. Sidwell of Billings, Montana, vendee, entered into a written agreement designated as ''Agreement for the Sale of Mines'' wherein is described seventeen patented lode mining claims,—eleven patented placer mining claims and certain other patented lands, all situate in Judith Basin County, Montana, together with all buildings, improvements, easements, rights-of-way and appurtenances, and all ore bodies and alluvial deposits together with all machinery, fixtures, water rights, flumes and ditches upon and operated in connection with such mining claims and land.

President Keller signed on behalf of the vendor corporation. His signature was attested by George Pope, the corporation secretary.

The vendee, Thomas P. Sidwell, affixed his own signature to the agreement.

Section 2 of the agreement reads: ''The consideration to be paid the vendor shall be the sum of Sixty-Five Thousand Dollars ($65,000), *in cash,* lawful money of the United States; and the delivery by the vendee to the vendor of seventy-five thousand (75,000) shares of the capital stock of Yogo Sapphire Min-

ing Corporation, having the par value of One Dollar ($1.00) each, and fully paid, and nonassessable; *the said payment to be made at once upon the ratification of this agreement by the stockholders* of the vendor corporation, and notice thereof to the vendee. Said sum. of Sixty-five Thousand Dollars shall be paid to the credit of the vendor and C. T. Gadsden, of Moccasin, Montana, at the First National Bank of Lewistown, in Lewistown, Montana, and the said corporate stock shall be delivered to said Bank, to be delivered to the vendor, or its nominees, with the delivery of the bill of sale and the deeds for said property, all properly executed by the vendor by authority of its Board of Directors, and approved by a vote of at least two-thirds of its Stockholders, at a regularly called meeting of its Stockholders, called and held for the purpose of voting on the approval of this contract and said sale　 *　 *　 *

"*Upon the payment of said money, and the delivery of said shares of stock, the vendee shall have the immediate right to enter into possession of said premises* * * *" (Emphasis supplied.)

*Pleadings.* On August 17, 1951, Thomas P. Sidwell, as plaintiff, filed the original complaint herein, to which the defendants on September 6, 1951, interposed their joint demurrer, both general and special.

By successive court orders duly given, the hearing on the demurrer was first continued to December 10, 1951, then to December 31, 1951, then to January 14, 1952, then to January 28. 1952, on which latter date the hearing was had, the demurrer argued and time allowed for the serving and filing of briefs and thereafter on May 11, 1953, the district court made an order overruling the special demurrer but sustaining the general demurrer on behalf of each defendant and allowing plaintiff further time in which to file an amended complaint.

On June 9, 1953, the plaintiff served and filed his amended complaint, consisting of some 21 typewritten pages, plus five additional pages comprising Exhibit A, being a copy of the above agreement for the sale of the described property.

On June 12, 1953, the defendants interposed their joint demurrer, both general and special, to the plaintiff's amended complaint and on June 22, 1953, counsel for the respective parties orally argued such demurrer, following which, time was again allowed for filing briefs whereupon the demurrer was submitted for decision.

On September 9, 1953, the trial court overruled the special demurrer but sustained the general demurrer on behalf of each defendant without leave to further amend, following which, on motion of defendants' counsel the trial court, on September 12, 1953, rendered and caused to be entered its judgment in favor of defendants and against plaintiff, dismissing the amended complaint without leave to further amend and awarding defendants their costs in the sum of ten dollars.

From the judgment so entered the plaintiff Thomas P. Sidwell has taken this appeal.

*Amended Complaint.* The amended complaint sets forth the names of the directors and officers of the defendant corporation and avers that they all reside in London, England, and not in Montana and that at the times mentioned the capital stock of the defendant corporation was 175,000 shares of common stock of the par value of $1.00 per share.

In paragraph VI of the amended complaint is quoted this provision of the agreement for sale, viz.: "It is understood by both parties hereto that this agreement constitutes a commitment by the Board of Directors of the vendor as a foundation for the submission of the said agreement to the Stockholders of the party of the first part at the meeting of Stockholders hereinabove referred to, which the Directors agree to call and hold at the earliest convenience, in accordance with the statutes of the State of Montana, where the said property lies; and will be binding when approved by the action of said Stockholders at such meeting."

The amended complaint also avers that pursuant to the agreement, a meeting of the stockholders of the defendant corporation was duly called by its board of directors for July 3, 1950, for

the purpose of considering and acting upon said agreement for sale; that notice of such meeting was duly given and published; that on July 3, 1950, there were present stockholders representing 135,775 shares of the outstanding stock of the defendant corporation; that said meeting was adjourned until July 13, 1950, at which adjourned meeting the same number of outstanding shares of stock were present or represented; that such stockholders did unanimously approve and ratify said agreement; that more than two-thirds of the outstanding stock of such corporation was present at such meeting, either in person or by proxy, and ratified such agreement and that plaintiff Thomas P. Sidwell was not notified of said stockholders' meeting and has not received any notice of any action taken at said meeting.

It is observed, however, that the plaintiff must have received notice, knowledge and information of the stockholders' meeting sometime and some place, otherwise he was in no position to so allege in his amended complaint.

The amended complaint further avers that in order to carry out the provisions of said agreement the plaintiff organized under the laws of Montana a corporation known as Yogo Sapphire Mining Corporation with a capital stock of $1,500,000, the shares having a par value of $1 per share; that plaintiff did agree with said Yogo Sapphire Mining Corporation, "that all of the property, real and personal, listed and named in said agreement hereto attached and marked Exhibit 'A,' would be by Plaintiff, transferred to said Yogo Sapphire Mining Corporation and that plaintiff did in writing, agree so to do, and that said agreement is still a valid and subsisting agreement, and in full force and effect."

The amended complaint further alleges: That plaintiff was unable to get the abstracts of title to said property until early in the year 1951; that they were not brought down to date and that he paid for such continuation of such abstracts; that said abstracts were submitted to his attorneys in Billings who, on April 21, 1951, gave him a written opinion of eight typewritten

pages which pointed out defects in the title which should be corrected before a good title could be conveyed and that the defendant corporation was advised of these defects in the title but has failed, neglected and refused to correct said defects.

The amended complaint further alleges: "That on the 5th day of June, 1951, R. H. Keller, the President of the defendant corporation, advised H. Leonard DeKalb, Attorney at Law of Lewistown, Montana, who was acting on behalf of said defendant corporation, that there was no question in regard to the title and that the defects in the title would be remedied and cleared only if the plaintiff paid to said defendant corporation, the sum of Sixty-five Thousand Dollars ($65,000.00) * * *"

The amended complaint further states that plaintiff has had no opportunity to examine said property and was advised by the defendant C. T. Gadsden that no opportunity would be allowed plaintiff to examine the same and that the defendant C. T. Gadsden is the caretaker and managing agent of the defendants' property here involved.

The amended complaint also alleges: "That plaintiff is advised and believes and therefore alleges that after said agreement (Exhibit 'A'), was executed, that the said R. H. Keller, President of the defendant corporation and the defendant C. T. Gadsden, conspired together to prevent plaintiff from going upon said properties or making any inspection or any sampling or any testing of said properties; that the said R. H. Keller, President of said defendant corporation and the said defendant C. T. Gadsden, conspired, to compel the plaintiff to purchase said property and to pay the entire purchase price thereof without being allowed to view said premises, to inspect, sample or test the same, or even without being allowed to go upon said premises * * * that said mine has not been in operation for a period of more than twenty (20) years, and during said time there has been a large amount of deterioration to the buildings, tools, machinery and equipment thereon and in the flumes for carrying water * * *

"That in spite of the repeated attempts by plaintiff to secure

an inspection of said property as hereinabove set forth, defendants have failed and refused to allow said inspection, or to allow the plaintiff to go upon said premises, and have demanded that before so doing, he pay to the defendant corporation, the full purchase price of said property * * *

''That in a further effort to reconcile the difficulties and differences and to adjust the same, and during the month of July, 1951, plaintiff made a trip to London, England, to consult with the officers and directors of said corporation, but without results; that in spite of the fact that the plaintiff had traveled a great distance for said interview and conference, the said R. H. Keller, President of the company, refused to talk with the plaintiff, or to give him any audience whatever; that said R. H. Keller advised the plaintiff that the defendant corporation was through with him, that said corporation did not intend to go on with its contract or to perform the same and would not further listen to or talk with plaintiff.''

That ''* * * in a further effort by plaintiff to secure the performance by said defendant corporation, the plaintiff did, during the month of May, 1951, place on deposit with the First National Bank of Lewistown, Montana, *a substantial sum* of money as a part of the purchase price of said properties, as further evidence of the good faith of the plaintiff in his desire to carry out and perform all of the covenants, terms and conditions of said contract on his part to be kept and performed and is ready, willing and able to deliver to the defendant corporation the $75,000 par value of the common stock of Yogo Sapphire Mining Corporation, as part of the purchase price for said property, but that the said defendant corporation still refused to perform the contract * * *''

The amended complaint also alleges: ''* * * that unless said contract is specifically performed by said defendant corporation, plaintiff will suffer great and irreparable loss; that plaintiff is entitled to have said contract specifically enforced and that plaintiff believes and therefore alleges that it is necessary that a receiver be appointed to take charge of the proper-

ties of said defendant corporation, to preserve the same and to carry out and to specifically perform the terms and covenants and conditions of said contract'' and it asks that the defendant C. T. Gadsden be restrained and enjoined from in any manner interfering with plaintiff or any receiver appointed by the court.

We have carefully stated or quoted above the material provisions of the lengthy and elaborate amended complaint seeking to compel specific performance of a written agreement which clearly states that the $65,000 should be paid *in cash*.

This provision of the agreement required the payment of the ██ $65,000 and delivery of the 75,000 shares of stock in said Yogo Corporation to be made *at once* upon the ratification of this agreement by the stockholders of the vendor corporation.

The agreement was duly ratified on July 13, 1950, and plaintiff has been in default ever since that date, which apparently explains the attitude of the officers and agent of the defendant corporation since that date. They were selling mining claims that had not been worked for 20 years and wanted their cash before the plaintiff should explore the properties.

The meaning of the word ''cash'' as used in said agreement is defined in 14 C.J.S., Cash, page 16, as follows: ''Referring to Time of Payment. With reference to the terms or time of payment, 'cash' has been defined as meaning immediate payment; money paid down; money or its equivalent paid immediately or promptly after purchasing.'' See Commercial Credit Corporation v. Third & Lafayette Streets Garage, 131 Misc. 786, 228 N.Y.S. 166, 168; 11 C.J., Cash, page 22, note 22.

In State v. Woodward, 208 Ala. 31, 93 So. 826, 827, the court said: ''In its ordinary use, as applied to business transactions, 'cash' is the antonym of 'credit,' and so the courts have generally understood and defined it.''

In Jenkins v. International Life Ins. Co., 149 Ark. 257, 232 S.W. 3, 6, the court said: '' 'Cash' is 'current money in hand —money paid down.' 'Note' is 'a written promise to pay money.' Webster's New International and Funk & Wagnall's Dicts. If the words 'cash' and 'note' do not have a different signifi-

cation as used in the receipt, then it was wholly unnecessary to use the word 'cash' at all in the clause under review * * *.'' See also 11 C.J., Cash, page 22, note 22, and page 25, notes 58 and 59; Elliott on Contracts, Vol. 2, section 1814, page 1148.

Furthermore, this is an action for specific performance of the contract, as stated by appellant in his brief, and is controlled by the provisions of R.C.M. 1947, section 17-803, which reads: *"No remedy unless mutual.* Neither party to any obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely, or nearly so, together with full compensation for any want of entire performance.''

R.C.M. 1947, section 17-809, reads: *"What parties cannot have specific performance in their favor.* Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated; in which case specific performance may be compelled, upon full compensation being made for the default.''

Section 17-803, supra, was construed in McDonald v. Stewart, 127 Mont. 188, 199, 259 Pac. (2d) 799, 805, where the court in affirming a judgment for defendant said: ''Before McDonald is entitled to specific performance by Stewart, he must show that he has performed his part of the agreement. This he has failed to do. R.C.M. 1947, section 17-803, provides: 'Neither party to any obligation can be compelled specifically to perform it, unless the other party thereto has performed * * *'.

''Unless performance is waived or excused, a plaintiff seeking to enforce a contract must perform his obligations thereunder, and plaintiff's wilful violation of an essential covenant of a contract is a defense to specific enforcement of the contract. 81 C.J.S., Specific Performance, section 94, page 614.''

Sections 17-803 and 17-809, supra, are the same as sections

3386 and 3392, Civil Code of California, enacted in 1872. Section 3392 is construed in Pitt v. Mallalieu, 85 Cal App. (2d) 77, 192 Pac. (2d) 24; Schwerin Estate Realty Co. v. Slye, 173 Cal. 170, 159 Pac. 420; Roy v. Pos, 183 Cal. 359, 191 Pac. 542; Los Angeles & Bakersfield Oil & Development Co. of Arizona v. Occidental Oil Co., 144 Cal. 528, 78 Pac. 25; Evarts v. Johnston, 34 Cal. (2d) 6, 206 Pac. (2d) 633.

As shown above, plaintiff agreed to pay $65,000 *cash* and did not do it. The allegation in the amended complaint, that in May 1951 he deposited a *"substantial"* amount with the First National Bank of Lewistown *as a part* of the purchase price, does not state the amount of such deposit nor meet the condition and requirement of the agreement. Plaintiff may have considered a deposit of $100, $1,000 or $5,000 *a substantial sum* but the agreement called for the payment of the "sum of Sixty-Five Thousand Dollars ($65,000.00) in cash" and not merely an unnamed indefinite *"substantial sum of money."*

Upon the above authorities and reasons the trial judge in this equity suit properly sustained defendants' demurrer to the amended complaint and entered its judgment of dismissal. Such judgment is affirmed.

MR. JUSTICES ANDERSON, DAVIS and BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

I do not agree with my associates that the amended complaint is insufficient to state a cause of action. It is true that the contract called for payment of $65,000 in cash and payment is required to be made at once upon the ratification of the agreement by the stockholders and notice thereof to the vendee. It is required to be paid to the credit of the vendor but according to the fair import of the contract this should be done upon delivery of the bill of sale and the deeds for the property. The contract on this point states, "Said sum of sixty-five thousand dollars shall be paid to the credit of the vendor * * * with

the delivery of the bill of sale and the deeds for said property." It seems to me that under this contract the payment of the purchase price and the delivery of the deeds and bill of sale were intended to be concurrent in point of time. The contract provided that the vendor shall furnish abstracts of title showing clear and marketable title. The abstracts were required to be delivered for examination at least two weeks before the stockholders' meeting. The vendee was required to pay all legal fees for the calling of the stockholders' meeting and escrow charges which it is alleged he did.

The amended complaint alleges upon information and belief that the stockholders approved the agreement at a duly called meeting on July 13, 1950. It alleges that plaintiff was not notified of the meeting and has received no notice of the action taken at the meeting. This simply means that plaintiff did not receive such notice from the corporation so as to fix the time when payment shall be made under the contract. But I do not rest my opinion on this point. It is alleged in substance that defendant refused to cure the defects in the abstract of title which plaintiff's counsel required, and declared that the defects would be remedied only if plaintiff paid to the defendant the sum of $65,000.

It is alleged that plaintiff, in order to adjust the matter, made a trip to London, England, to consult with the officers of the corporation and they refused to talk with him; that plaintiff, to show his good faith in the matter, deposited with the First National Bank of Lewistown a substantial sum of money as a part of the purchase price and alleged that he was ready, willing and able to deliver the $75,000 par value shares of stock of the Yogo Sapphire Mining Corporation as agreed, and plaintiff further alleged that he is and has been at all times since the contract was made "ready, willing and able to perform the contract" and all its terms and conditions.

I do not believe it was incumbent upon plaintiff to deposit to the credit of defendant the whole $65,000 when, as here,

there was a bona fide difference between the parties with respect to the title of the property.

If the allegations of the amended complaint are true, and we must on demurrer admit them to be so, then defendant's officers seem to have changed their minds and have in common parlance given plaintiff the run-around. It is alleged specifically that defendant refuses to perform the contract or any part of it and that the officers are all without the jurisdiction of the court. Where, as here, defendant (whose officers and directors live in London and are not in the jurisdiction of the court) has indicated a purpose not to comply with the contract, no one could be expected to deposit to its credit the $65,000 before obtaining the deeds showing a good and marketable title, and a fair reading of the contract does not call for such a deposit until then. Once the $65,000 got to London plaintiff was warranted in suspecting difficulty in either getting it back or obtaining good title to which he was entitled.

He had ample cause to be apprehensive about the good faith of defendant corporation and its officers.

He alleged in his amended complaint that he had purchased 300 shares of stock of defendant corporation in July 1949 and sent the certificates to the officers of the corporation for transfer to his name; that the corporation advised that the transfer would be made if and when plaintiff paid the transfer fee; that plaintiff thereupon sent the transfer fee to defendant but it has failed and refused to transfer the certificates of stock to him and does not recognize him as a stockholder. The amended complaint was filed on June 9, 1953. Hence plaintiff cannot in the light of his experience be expected to deposit $65,000 to the credit of defendant corporation and then embark upon expensive and protracted litigation in an effort to get defendants to carry out their part of the contract by making the title good and giving deeds and bills of sale and I think the contract does not contemplate such an absurdity.

I think the tender was sufficient by alleging that plaintiff was ready, willing and able to perform his part of the contract.

The rule which I think is applicable here is stated in 81 C.J.S., Specific Performance, section 101, page 622, as follows: "In connection with mutual and concurrent covenants, where payment of the price and delivery of the conveyance are to be simultaneous acts, an offer to pay by the purchaser, coupled with an ability to pay, on condition that the vendor concurrently performs his part by executing a deed, is a good and sufficient tender."

I have no quarrel with the authorities cited in the majority opinion defining the word "cash." Here plaintiff, according to the amended complaint, is ready, willing and able to put up the cash when good and marketable title is produced and that is all that the contract requires. I see nothing in McDonald v. Stewart, 127 Mont. 188, 259 Pac. (2d) 799, that militates against my views here. There is nothing in this case, as in that one, that indicates a failure upon the part of the plaintiff to perform his part of the contract. Neither do I see wherein R.C.M. 1947, sections 17-803 and 17-809, have been ignored or violated.

I think the amended complaint states facts sufficient to constitute a cause of action and that defendant should be required to file its answer. If upon the trial plaintiff should prevail, a court of equity will shape its decree so as to require *cash* on the part of plaintiff rather than promissory notes or other substitutes for cash and that is all the contract means when it speaks of cash. The time for the deposit of the cash is fixed by other provisions of the contract which contemplate the furnishing of deeds conveying good and marketable title as a condition precedent.

I think the general demurrer to the amended complaint should be overruled.