RAY L. INGALLS AND CECIL R. HINES, PLAINTIFFS AND APPEL-
LANTS, *v.* KATHERINE T. BRADY, INDIVIDUALLY AND AS PER-
SONAL REPRESENTATIVE OF THE ESTATE OF THOMAS A MAN-
GAN, DEFENDANT AND RESPONDENT.

No. 13943.
Submitted Nov. 20, 1978.
Decided Feb. 28, 1979.
591 P.2d 200.

Milodragovich, Dale & Dye, Missoula (Lonnie J. Dale, argued), for plaintiffs and appellants.

Garnaas, Hall & Riley & Pinsoneault, Harold J. Pinsoneault argued, Missoula, for defendant and respondent.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

Plaintiffs appeal from an order of dismissal and judgment of the District Court, Missoula County, dismissing their complaint for specific performance of a contract for deed, and entering judgment in favor of defendant.

In October 1976 Katherine T. Brady inherited a parcel of real property located at 404 North Alder Street, Missoula, Montana. At that time, Mrs. Brady lived in New Mexico. Desiring to sell the inherited property, she entered into a listing contract with Dickson-Thomas Realty of Missoula, employing them to sell the property for her for $32,000. Dickson-Thomas began advertising the property for sale in the Missoula newspaper.

In response to the advertisements, Ray Ingalls and Cecil Hines contacted Dickson-Thomas on September 16, 1976 and the parties entered into an agreement to sell and purchase. Ingalls and Hines made an earnest money payment of $100.

The agreement to sell and purchase called for $7,000 down payment, with the remaining balance of $25,500 to be carried on a contract deed for over 20 years at 8% interest. These terms were conveyed to Mrs. Brady by Dickson-Thomas, and she accepted them by a telegram dated September 16, 1976 which read: "I, Katherine T. Brady accept the offer from Dickson-Thomas for $32,500 with $7,000 down for my property at 404 North Alder Street, Missoula, Montana."

Among the other provisions of the agreement to sell and purchase executed by Dickson-Thomas as agent for Mrs. Brady was a paragraph specifying that both seller and purchaser were authorized to enforce the remedy of specific performance, and a provision for a closing date of "on or before November 1, 1976."

At the time the agreement to sell and purchase was executed, Cecil Hines was not present. The agreement was signed by Ingalls on behalf of both purchasers as follows:

"Ray I. Ingalls

Cecil R. Hines by Ray Ingalls"

Subsequent to having entered into the agreement with Ingalls and Hines through Dickson-Thomas, Mrs. Brady became aware of at least one other offer by which she could have sold the property for a significantly higher price. It is her position, however, that this better offer had no influence on the events which occurred on the day scheduled for closing of the Ingalls-Hines deal, which events have culminated in this litigation.

At any rate, once the terms of the agreement to sell and purchase had been accepted by Mrs. Brady, Ingalls and Hines had their attorneys prepare a Contract for Deed, Notice of Purchaser's Interest, and Warranty Deed. These were sent to Mrs. Brady in New Mexico and executed there by her and her husband on October 9, 1976.

On October 11, 1976, Mrs. Brady came to Missoula. Wanda Young, an employer of American Land Title Co., who had furnished the preliminary title policy, was to handle the closing of the transaction. Closing was set for October 22. At eleven a.m. on that date, Mrs. Brady went to Wanda Young's office, expecting to have

cash available to her then and there to close the deal. Ingalls and Hines, however, had arranged with Wanda Young to come in at 2:00 p.m. that afternoon. Thus, there were no funds on deposit yet. Mrs. Brady, therefore, on the advice of her attorney, took the contract for deed, warranty deed, and notice of purchaser's interest (which she had previously signed and which had previously been given to Wanda Young in anticipation of the closing) and left. At 2:00 p.m. when Ingalls and Hines came in, Wanda Young informed them that Mrs. Brady had taken the documents they were to sign and that they would be unable to close. Subsequent efforts were made by Ingalls and Hines to bring about the closing on several occasions thereafter, but to no avail.

On November 18, 1976, Ingalls and Hines filed a complaint in the District Court, Missoula County, praying for specific performance of the agreement to sell and purchase. Trial was held before Judge E. Gardner Brownlee on June 27, 1977. The trial court concluded that because Hines had not signed the agreement to sell and purchase, but rather Ingalls had signed for him, there was no mutuality of remedy between Mrs. Brady and Hines. Since mutuality of remedy is a long recognized requirement for the enforcement of specific performance, Ingalls and Hines complaint would be dismissed. (Judge Brownlee did consider several other matters in reaching his decision, but it is clear from the record that his ruling was based primarily on the supposed flaw of lack of mutuality.) From the findings of fact, conclusions of law, and judgment subsequently entered, Ingalls and Hines have brought this appeal.

Before turning to the issues we find dispositive here, we should point out that the fact scenario above is by no means exhaustive, but merely recites the uncontested points from a record that is otherwise characterized by confusion and disagreement. There is conflicting testimony whether Wanda Young expected Mrs. Brady to appear personally at the closing, or whether it had been anticipated that Mrs. Brady would not be present and the closing would be completed through the mail. There is disagreement as to whether Ingalls and Hines knew Mrs. Brady expected the closing to

be a cash transaction and would not go through with the sale otherwise. It is also unclear why the buyers and the seller did not meet at Wanda Young's office at the same time, rather than the seller arriving in the morning and the buyers not until afternoon.

Wanda Young did not appear in person at the trial of this cause; rather, her testimony was by deposition only. She did appear personally, however, at a subsequent hearing on plaintiff's motion to amend the findings and conclusions or for a new trial. At that hearing her testimony negated any inferences of fault on the part of Ingalls and Hines for not appearing at 11:00 a.m. to meet with Mrs. Brady and for not having cash available. Nonetheless, the trial court refused to grant a new trail or to amend its findings and conclusions. The court stated that Mrs. Young's testimony did not render the judgment improper because the matters she addressed were "a very minor factor" therein. That being the case, the primary issue we must address can be stated as follows: Did the District Court err in holding that the fact that Ingalls signed the buy-sell agreement for Hines precluded the mutuality of remedy required for Ingalls and Hines to maintain a specific performance action against Mrs. Brady? We conclude that it did.

Specific performance of a contract for the sale of realty is not precluded because of either lack of mutuality as to obligation or remedy on the ground that only one of two purchasers signed the contract as purchaser, where the vendor knows that the signer is authorized by the other purchaser to act in making the purchase. *Shreeve v. Greer* (1946), 65 Ariz. 35, 173 P.2d 641. "Where there is an agreement to sell a certain piece of property and such agreement is signed by only one of the parties thereto, and therefore seemingly lacking in mutuality of remedy, the party who did not sign can bring a suit for specific performance and thereby make the remedy mutual." *Jones v. Leland* (1947), 77 Cal.App.2d 770, 176 P.2d 764, 768, disapproved on other grounds, *Ellis v. Mihelis* (1963), 60 Cal.2d 206, 32 Cal.Rptr. 415, 421, 384 P.2d 7.13. A plaintiff who has not signed a contract for the sale of realty to himself and another supplies the necessity mutuality of obligation

by instituting an action for specific performance of the contract. *Jones v. Elliot* (1950), 123 Mont. 597, 218 P.2d 703. These cases state the general rule. 81 C.J.S. Specific Performance § 11. Further, even without the above authorities, the plain meaning of the controlling Montana statutes indicated there was no lack of mutuality here. Section 17-805, R.C.M.1947, now section 27-1-417 MCA, provides that a party who has not signed a contract may, by offering to perform, compel specific performance from the party who has signed. Section 17-802, R.C.M.1947, now section 27-1-414(1) MCA, provides that when either party to an obligation is entitled to specific performance, the other party is also entitled to it. Since Hines could have specific performance from Mrs. Brady under the former section, she has the mutual right under the later.

Having concluded that Ingalls and Hines are not barred from obtaining specific performance because of lack of mutuality, we now turn to a discussion of the other factors the trial court considered persuasive. Mrs. Brady argued that her refusal to complete the agreement on October 22 was justified because cash money was not immediately available to her when she went to the closing agent's office, and because Ingalls and Hines did not appear at the 11:00 a.m. meeting. The findings of the trial court imply that Mrs. Brady's explanation, even aside from the lack of mutuality issue, was sufficient to allow her to avoid the agreement for failure of the plaintiffs to tender the purchase price. Although failure to tender the purchase price may be grounds for recission of a contract under some circumstances, we do not find that to be the case here.

The distinguishing feature present here in this regard is that the events at issue occurred on October 22, and the agreement itself specified only that closing was to take place on or before November 1. Time was not of the essence. Where time is not of the essence, a vendor is not entitled to rescind a contract without first tendering performance on his part as by tendering a deed and demanding performance by purchaser, and allowing a reasonable time to elapse thereafter. 91 C.J.S. Vendor & Purchaser § 136. As to the need for cash to complete the transaction, there had appar-

ently been no prior discussion between the parties on the method of payment; it was merely Mrs. Brady's expectation that cash money would be available to her at the closing. Ingalls and Hines' attorney called Mrs. Brady's attorney the same day as the scheduled closing and offered to perform on whatever terms Mrs. Brady wanted. "A mere dispute as to the manner of performance resulting from a misunderstanding which is not persisted in . . . does not justify a recission" of a contract 17A C.J.S. Contracts § 422(1). A vendor cannot effectively declare a forfeiture of a contract for the sale of land because of a vendee's failure to pay promptly an installment of purchase money when the default in payment is caused or connived at by the vendor. Annot. 197 A.L.R. 345, § 8.

This entire dispute appears to have been precipitated by a failure of communication between the closing agent, the parties to the transaction, and their attorneys. Review of the complete record indicates that defendant is attempting to seize upon a minor failure on plaintiffs' part (which was occasioned as much by her own unreasonableness as by any act or omission of plaintiffs) so that she can accept a better offer and avoid an otherwise valid contract. Plaintiffs should not be faulted for failure to tender the purchase price when they apparently made every good faith effort to comply with defendant's demands, but were refused even though the closing date specified in the agreement had not yet passed. The judgment of the District Court is reversed and the cause remanded with instructions to order Mrs. Brady or her successors in interest (lis pendens has been timely filed) to specifically perform the buy-sell agreement by selling the real property described therein to Ingalls and Hines under the terms set forth in the agreement.

Reversed.

MR. JUSTICE HARRISON and SHEA concur.

MR. JUSTICE SHEEHY dissenting.

Some of the facts in the majority opinion need supplementing. Katherine T. Brady, the owner of the real property involved, signed listing contract with Dickson-Thomas Realty in Missoula,

wherein she employed the agency as her broker to sell the real property for a price of $32,500.00 plus the real estate commission. Dickson-Thomas procured as buyers, Ray L. Ingalls and Cecil R. Hines (Ingalls testified that he was also a real estate broker) under a sell-purchase agreement dated September 16, 1976. Neither Katherine Brady, who was the owner of the property, nor her husband signed the sell-purchase agreement. Instead, by telegram, she notified Dickson-Thomas Realty that she accepted the offer from "Dickson-Thomas" for $32,500, with $7,000.00 down for her property.

Thereafter, the buyers procured a preliminary title insurance policy, assured themselves of the title that Mrs. Brady was able to deliver and had their lawyers draw up a contract for deed, and notice of purchasers interest which were sent to sellers by their attorney H. J. Pinsoneault. The contract for deed, drawn by buyers' lawyers, provided for a $7,000.00 down payment consisting of the $100.00 previously paid as ernest money, and the "further sum of $6,900.00 *cash* paid upon execution of this agreement".

Mrs. Brady came to Missoula for the purpose of closing the contract. When she arrived there, she discovered that her real estate brokers were claiming a broker's fee out of the $32,500, although her listing agreement had provided that the commission would be in addition to that purchase price. This dispute was not resolved until the day of the proposed closing, and even on that day, the real estate agency had instructed the closing agent that the agency would retain the $100.00 paid as ernest money for "costs" incurred in handling the transaction.

The closing date was arranged for 11:00 a.m. on October 22, 1976. On the day before, Ingalls came to the office of H. J. Pinsoneault, and there picked up the signed contract, deed, and notice, and took them over to the office of American Land Title Company in Missoula where the closing of the transaction was to take place. At 11:00 a.m. on October 22, Mrs. Brady and her attorney appeared at the title company office. Neither Ingalls nor Hines appeared at that time. It was stated that Hines was unable to appear

because he had a doctor's appointment. Ingalls testified that although he had signed the sell-purchase agreement for himself and on behalf of Hines, that it was necessary that Hines be present at the closing transaction. In other words, Ingalls was not empowered to act for Hines at the time of closing.

When neither Ingalls nor Hines appeared at 11:00 a.m. Mrs. Brady picked up her contract, deed and notice, and removed them from the title company office. That afternoon, Pinsoneault received a telephone call from Ingalls that the buyers would not be able to get a cashier's check for the down payment that afternoon.

Wanda Young, the employer of the title company who was to handle the closing transaction, testified that she would not disburse funds on the part of American Land Title Company to Mrs. Brady unless the title company had received either cash from Ingalls and Hines or a cashier's check. Ingalls testified that it was not his understanding that cash would be paid to Mrs. Brady at the time of closing, although in fact his contract, drawn by his attorney, had read that the final part of the down payment was to be in cash, paid upon the execution of the agreements. At no time afterwards did either Ingalls or Hines tender to the seller the amount of money in cash necessary to complete the $7,000.00 down payment on the proposed contract.

Ingalls and Hines brought an action for specific performance against Katherine T. Brady. The district judge dismissed the action and entered judgment in favor of Mrs. Brady on the following grounds: (1) that mutuality did not exist because Ingalls had not signed the sell-purchase agreement; (2) that although Wanda Young, had instructed Ingalls and Hines to bring a cashier's check to the closing because Mrs. Brady wanted to take the money back with her to New Mexico, plaintiffs did not do so at the time of closing; (3) that the closing time for the contract had been set for 11:00 a.m. on October 22, 1976 and that plaintiffs had failed to perform at that time. Wanda Yound had testified that she didn't need the plaintiffs there and could have closed it without them, if she had the cash on hand; (4) Ingalls, who was available and came to the of-

fice at 2:00 p.m. elected not to do anything at that time, to make a tender; (5) that Ingalls at the time contended that until Hines was available, he could not close the transaction and make a binding agreement without the presence of Hines.

It is true that section 17-805, R.C.M. 1947, now section 27-1-417 MCA, provides that a party who has not signed a written contract for the purchase of real estate may obtain specific performance if he offers to perform on his part. We held that the bringing of an action for specific performance was such an offer in *Johnson v. Elliot* (1950), 123 Mont. 597, 218 P.2d 703.

However, the rest of the objections raised by the District Court in dismissing the action and entering judgment in favor of Mrs. Brady had valid and binding force. In essence, what the District Court has found and relied upon is the fact that the plaintiffs in this case failed to perform their part of the agreement. Under section 17-803, R.C.M. 1947, now section 27-1-414 MCA, no party to an obligation can be compelled specifically to perform it unless the other party thereto has performed. Under section 17-809, R.C.M. 1947, now section 27-1-416 MCA, specific performance cannot be granted in favor of a party who has not fully and thoroughly performed all the conditions precedent on his part to the obligation of the other party. It is in these particulars that plaintiff have utterly failed to comply with or perform their part of the contract. Their right to purchase under the contract depended upon their tender of cash in the approximate amount of $6,900.00. This they did not do. Therefore, they have failed to perform their part of the contract and are not entitled to receive a deed or contract for deed from Mrs. Brady. They had already approved the title of Mrs. Brady and on October 22, 1976 the only thing remaining to be done under the contract was the payment by them of cash in return for the signed contracts, deed and notice of purchaser's interest on the party of Mrs. Brady.

This is a case similar to *Sidwell v. New Mine Sapphire Syndicate* (1956), 130 Mont. 189, 197, 297 P.2d 299, where this court held that a purchaser was not entitled to specific performance if the pur-

chaser had not provided the cash necessary to complete performance before it brought the action. There the court followed the holding in *McDonald v. Stewart* (1953), 127 Mont. 188, 199, 259 P.2d 799, 805, where this Court held that before specific performance could be obtained by plaintiff, he must show that he had performed his part of the agreement.

In the recent case of *Seifert v. Seifert* (1977), 173 Mont. 492, 568 P.2d 155, this Court held that before specific performance can be granted, the party seeking the same must show that he has performed his part of the contract, and that under section 17-809, now section 27-1-416 MCA, he may not get specific performance if he has "not fully and fairly performed all conditions precedent on his part to the obligation." There we said that a party who has not performed his part of the contract does not come into the Court with clean hands, and so cannot recover the equitable remedy of specific performance. 568 P.2d at 158.

". . . [G]enerally, whenever the failure to convey land under an executory contract of sale is due solely to the refusal of the purchaser to pay or tender the stipulated purchase price, according to the terms of his agreement, specific performance will be refused to the purchaser . . ." 71 Am.Jur.2d *Specific Performance* § 65, p. 94.

The net result of the decision by the majority here is that for a payment by Ingalls and Hines of $100.00 to the realty agent (which sum was never received by Mrs. Brady) Ingalls and Hines are entitled to specific performance of a $32,500.00 contract.

I would affirm the District Court in toto.

Mr. Justice GENE B. DALY concurs in the foregoing dissent.