No. 96-080

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

ROCKY MOUNTAIN BANK, f/k/a
SECURITY STATE BANK,

      Plaintiff and Respondent,

  v.

DOUGLAS STUART,

      Defendant and Appellant.

FILED

DEC 10 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Seventeenth Judicial District,
In and for the County of Blaine,
The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          William A. Squires, Randall C. Lester; Matteucci,
Falcon, Squires & Lester, Great Falls, Montana

      For Respondent:

          Greg A. Luinstra; Luinstra & Semansky, Great
Falls, Montana

Submitted on Briefs:  September 12, 1996

Decided:  December 10, 1996

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Douglas Stuart (Stuart) appeals from the judgment of possession entered by the Seventeenth Judicial District Court, Blaine County, on its order granting the motion for summary judgment filed by Rocky Mountain Bank, f/k/a Security State Bank (Bank), and from orders denying his motion to alter or amend and amending the judgment of possession. We affirm.

We address the following issues on appeal:

1. Did the District Court err in granting summary judgment to the Bank based on its conclusion that the nonjudicial foreclosure sale under the Small Tract Financing Act of Montana was properly conducted?

2. Did the District Court err in granting summary judgment to the Bank based on its conclusion that Stuart was not entitled to notice to vacate the trust property after the nonjudicial foreclosure sale under the Small Tract Financing Act of Montana?

## FACTS AND PROCEDURAL BACKGROUND

The following facts are undisputed. On July 28, 1979, Stuart executed a trust indenture covering residential property (trust property) in Blaine County, Montana. The trust indenture, which conveyed the trust property to a trustee and named the Bank as beneficiary, secured Stuart's obligation to the Bank in the principal amount of $80,000. The trust indenture was modified in 1991 and rerecorded.

Stuart subsequently defaulted on his obligation to the Bank and a successor trustee (trustee) began nonjudicial foreclosure

2

proceedings on the trust property under the Small Tract Financing Act of Montana (STFA). The trustee notified Stuart and his counsel of the foreclosure proceedings and the date of the foreclosure sale. At the time of the sale, Stuart owed the Bank $97,051.63 in principal and interest; he also owed delinquent taxes on the trust property in excess of $15,500.

The Bank was the only bidder at the foreclosure sale held in April of 1995. It made a $69,900 "credit bid," which the trustee accepted over Stuart's objection. The trustee then executed and recorded a trustee's deed conveying the trust property to the Bank.

Stuart remained in possession of the trust property during the foreclosure proceedings. The Bank did not send him a notice to vacate the trust property after the foreclosure sale, and he continues to refuse to relinquish possession of the trust property to the Bank.

On May 18, 1995, the Bank filed its complaint for possession of the trust property pursuant to § 71-1-319, MCA, and for attorney fees and costs incurred in the action for possession. In answering the Bank's complaint, Stuart argued that the foreclosure sale was invalid because it was not a cash sale as required by law; the Bank did not follow statutory procedures to obtain possession of the trust property after the foreclosure sale; and the Bank was not entitled to attorney fees in the action for possession.

The Bank moved for summary judgment, contending that its so-called "credit bid," under which it applied the amount bid against the outstanding debt owed by Stuart, complied with the statutory

3

requirements for a nonjudicial STFA foreclosure sale and that Stuart was not entitled to notice to vacate after the sale. Stuart filed a cross-motion for summary judgment. He did not dispute that the Bank applied the bid amount against his outstanding debt; he claimed, instead, that the foreclosure sale was improperly conducted because the Bank did not pay the trustee in cash. Alternatively, Stuart argued that the Bank's complaint for possession was premature because § 70-27-104, MCA, entitled him to post-sale notice to vacate and the Bank did not give such notice; therefore, according to Stuart, the Bank's complaint should be dismissed.

The District Court granted the Bank's motion for summary judgment on the basis of the parties' stipulated facts and briefs. In addition to its conclusions that the foreclosure sale was properly conducted and Stuart was not entitled to notice to vacate thereafter, the court determined that the Bank was entitled to reasonable costs and attorney fees and assistance from the Blaine County Sheriff (Sheriff) in obtaining possession. The Bank subsequently filed its memorandum of costs as directed by the District Court.

Stuart moved to alter or amend the summary judgment order and for a stay of execution pending the District Court's decision on that motion. The District Court entered a judgment of possession in favor of the Bank and subsequently granted Stuart's motion for stay of execution. Later, the court denied Stuart's motion to

4

alter or amend and lifted the stay, and the Bank filed its affidavit of attorney fees incurred in the action.

In response to a motion for clarification filed on behalf of the Sheriff, the District Court amended its judgment of possession by deleting the order of assistance until the Bank made a demand for possession and Stuart had an opportunity to respond. Stuart subsequently refused to relinquish possession to the Bank and the Bank applied for a writ of assistance. Stuart appealed before the District Court could rule on the Bank's application for a writ of assistance or hold a hearing to determine the amount of attorney fees to which the Bank is entitled.

## STANDARD OF REVIEW

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review a district court's grant of summary judgment de novo, applying the same Rule 56(c), M.R.Civ.P., criteria used by that court. Jarrett v. Valley Park, Inc. (Mont. 1996), 922 P.2d 485, 487, 53 St.Rep. 671, 672 (citation omitted). Ordinarily, such a review requires that we first determine whether the moving party met its burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Jarrett, 922 P.2d at 487.

In this case, however, the parties agreed on the material facts and, via their cross-motions for summary judgment, each party asserted entitlement to judgment as a matter of law. The District Court having granted the Bank's motion for summary judgment, we

5

need only determine whether it was correct in concluding that the nonjudicial foreclosure sale was properly conducted and that Stuart was not entitled to notice to vacate the trust property.

## DISCUSSION

1. Did the District Court err in granting summary judgment to the Bank based on its conclusion that the nonjudicial foreclosure sale under the STFA was properly conducted?

Nonjudicial STFA foreclosure sale procedures and requirements are governed by statute in Montana. The STFA provides, in relevant part, that "[t]he purchaser at the [foreclosure] sale shall pay the price bid in cash . . . ." Section 71-1-315(4), MCA. The Bank maintains that the STFA permitted it, as the trust indenture beneficiary, to pay the price bid by applying the amount of its bid to Stuart's outstanding indebtedness. Stuart, on the other hand, contends that the foreclosure sale was not properly conducted because the Bank did not pay cash for the trust property as required by the STFA. He contends that the plain language of the statute requires that foreclosure sales be conducted only on cash bids.

We have not previously interpreted the phrase "shall pay the price bid in cash" contained in § 71-1-315(4), MCA. In interpreting a statute, we look first to the plain meaning of the words it contains. Werre v. David (1996), 275 Mont. 376, 385, 913 P.2d 625, 631 (citing Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088); Gulbrandson v. Carey (1995), 272 Mont. 494, 500, 901 P.2d 573, 577. Where the language is clear and unambiguous, the statute speaks for itself and we will not resort

6

to other means of interpretation.  Werre, 913 P.2d at 631 (citing Clarke, 897 P.2d at 1088).  In this regard, words used by the legislature must be given their usual and ordinary meaning.  Werre, 913 P.2d at 631.

The proper interpretation of the word "cash," undefined by the legislature in enacting the STFA, is determinative of whether the nonjudicial foreclosure sale at issue here complied with § 71-1-315(4), MCA, and we previously have determined the ordinary meaning of that word.  In Sidwell v. The New Mine Sapphire Syndicate (1956), 130 Mont. 189, 196, 297 P.2d 299, 302, we discussed the definition of "cash" in the context of an agreement for the sale of mining claims.  Under the terms of the agreement, the plaintiff had agreed to deposit a sum of money in cash to the defendant's credit at a local bank immediately upon ratification of the agreement by the defendant's stockholders.  Sidwell, 297 P.2d at 299-300.  The plaintiff deposited a substantial sum of money, but not the entire amount required, to the defendant's credit at the bank after the agreement was ratified and then sued for specific performance. Sidwell, 297 P.2d at 302.

In addressing whether the plaintiff's deposit of less than the stipulated amount of cash constituted compliance with the agreement, we discussed the concepts of cash and credit.  "'With reference to the terms or time of payment, "cash" has been defined as meaning immediate payment; money paid down; money or its equivalent paid immediately or promptly after purchasing.'" Sidwell, 297 P.2d at 302 (quoting 14 C.J.S. Cash, p. 16) (citations

7

omitted). Courts generally define cash as the antonym of credit. Sidwell, 297 P.2d at 302 (citation omitted).

Applying this ordinary meaning of the word, "cash"--as used in § 71-1-315(4), MCA--means money or its equivalent paid immediately or promptly after the purchase. Placed in the context of the statutory phrase "shall pay the price bid in cash," paying the price bid in money or its equivalent immediately or promptly after the foreclosure sale satisfies the requirement set forth in § 71-1-315(4), MCA.

Here, the Bank was the trust indenture beneficiary. It bid $69,900 on the trust property at the foreclosure sale and, after acceptance of its bid by the trustee, credited the bid amount to the outstanding indebtedness owed to it by Stuart. Application of the bid amount to Stuart's outstanding indebtedness is the equivalent of a money payment of the bid amount because it reduced the amount of Stuart's outstanding indebtedness to the Bank in precisely the same way that a payment in cash to the trustee-- followed by the trustee turning over that amount of cash to the Bank for application to Stuart's indebtedness--would reduce the amount Stuart owed the Bank. We conclude, therefore, that an accepted "credit bid" by the trust indenture beneficiary at a nonjudicial STFA foreclosure sale, defined as the prompt application of the bid amount to the trust indenture grantor's outstanding debt, constitutes payment by the purchaser of the price bid in cash as required by § 71-1-315(4), MCA.

8

Stuart contends that the Bank's purchase of the trust property was a credit sale prohibited by § 71-1-315(4), MCA. He relies on the definition of a credit sale, contained in BLACK'S LAW DICTIONARY 333 (5th ed. 1979), as a "sale in which the buyer is permitted to pay for the goods at a later time, as contrasted with a cash sale." The definition, while valid, is not applicable to the facts before us.

Here, the Bank was not permitted to pay "at a later time" as would be the case if the bid were in the form of a note or other instrument pursuant to which either a lump sum payment or payment by installments over time would be made in the future. Rather, as discussed above, the Bank's application of the bid amount to Stuart's outstanding debt constituted payment of the price bid in cash as required by § 71-1-315(4), MCA. In the context of the definition advanced by Stuart, the foreclosure sale at issue here was, indeed, a cash sale rather than a credit sale.

Nor is Stuart's reliance on Greenberg v. Alter Company (Iowa 1963), 124 N.W.2d 438, to any avail. While Stuart correctly cites to Greenberg for the proposition that a cash sale and a credit sale are "completely opposite creatures" (see Greenberg, 124 N.W.2d at 441), Greenberg merely exemplifies our observation in Sidwell that courts generally define cash as the antonym of credit. See Sidwell, 297 P.2d at 302. Moreover, Greenberg addressed whether cash includes cashier's checks, certified checks or the placement of a bid amount in an escrow account. Greenberg, 124 N.W.2d at

441. Nothing in <u>Greenberg</u> supports Stuart's argument that the foreclosure sale before us was a credit sale.

As a final matter, we observe that the District Court determined that the Bank was entitled to judgment as a matter of law on the basis of a different legal conclusion than we have reached above. The court concluded that to interpret § 71-1-315(4), MCA, as requiring a trust indenture beneficiary to actually pay cash to the trustee--who, in turn, would return the cash to the beneficiary for application to the borrower's indebtedness--would be to require an idle act, which the law never requires. See § 1-3-223, MCA. While the "idle acts" maxim of jurisprudence has been statutorily enacted in Montana, we note that such maxims are intended "not to qualify any of the other provisions of [the MCA] but to aid in their just application." Section 1-3-101, MCA. Under our interpretation of the plain meaning of § 71-1-315(4), MCA, above, it is unnecessary to determine whether--or to what extent--the "idle acts" maxim of jurisprudence might otherwise aid in the just application of § 71-1-315(4), MCA. In any event, we will affirm a district court's decision which reaches the correct result regardless of the court's reasoning. Bowen v. McDonald (Mont. 1996), 915 P.2d 201, 206, 53 St.Rep. 343, 346 (citations omitted).

We hold that the District Court did not err in granting summary judgment to the Bank based on its conclusion that the nonjudicial foreclosure sale under the STFA was properly conducted.

> 2. Did the District Court err in granting summary judgment to the Bank based on its conclusion that Stuart

10

was not entitled to notice to vacate the trust property after the nonjudicial foreclosure sale under the STFA?

Section 71-1-319, MCA, provides:

The purchaser at the trustee's sale shall be entitled to possession of the property on the 10th day following the sale, and any persons remaining in possession after that date under any interest, except one prior to the trust indenture, shall be deemed to be tenants at will.

The Bank contends that, pursuant to § 71-1-319, MCA, it was entitled to possession of the trust property ten days after the STFA nonjudicial foreclosure sale without giving Stuart notice to vacate the trust property. Stuart maintains that his interest in the trust property did not arise prior to his execution of the trust indenture and, therefore, he became a tenant at will by remaining in possession past the tenth day after the sale. Accordingly, he argues that § 70-27-104, MCA, requires the Bank to provide him with a thirty-day notice to vacate the trust property prior to terminating the tenancy and obtaining possession of the property.

The parties' stipulated facts do not provide a sufficiently clear basis for determining whether Stuart had an interest in the trust property prior to executing the trust indenture. Thus, we cannot resolve the specific question of whether Stuart became a tenant at will under § 71-1-319, MCA. We need not do so, however, in order to determine whether he was entitled to notice to vacate the trust property.

In this case, Stuart executed a trust indenture covering the trust property with the Bank as beneficiary. Except where statutes governing real property mortgages are inconsistent with the laws

11

governing trust indentures, a trust indenture is deemed to be a mortgage on real property and is subject to the laws governing real property mortgages. See § 71-1-305, MCA. Therefore, a trust indenture, like a mortgage, is a contract--an agreement between two or more parties to do, or not to do, something--by which property is pledged, without delivery of title or possession, for the performance of an act. See § 71-1-101, MCA; § 28-2-101, MCA; Weldon v. Montana Bank (1994), 268 Mont. 88, 93, 885 P.2d 511, 514.

By executing the contractual trust indenture in July of 1979, Stuart obligated himself to perform according to its terms. One of those terms, expressly set out in Paragraph 15 of the trust indenture, is that:

> Grantor agrees to surrender possession of the hereinabove described trust property to the purchaser at the aforesaid sale on the tenth (10th) day following said sale, in the event such possession has not previously been delivered by Grantor.

Stuart was the grantor named in the trust indenture; the Bank was the purchaser at the foreclosure sale. Pursuant to Paragraph 15, therefore, Stuart specifically contracted to surrender possession of the trust property to the Bank on the tenth day after the sale.

Notwithstanding Paragraph 15, Stuart contends that the Bank was statutorily required to provide a thirty-day notice to him to vacate the trust property. He relies on § 70-27-104, MCA, which requires landlords to give tenants at least one month written notice before terminating a tenancy at will. Section 70-27-104, MCA, clearly was enacted in order to protect a tenant against termination of the tenancy without adequate notice.

12

Even assuming arguendo the validity of Stuart's claim that he is a tenant at will, he is not entitled to the benefit of § 70-27-104, MCA. Section 1-3-204, MCA, provides that "[a]nyone may waive the advantage of a law intended solely for his benefit." By executing the trust indenture and agreeing, via paragraph 15, to vacate the trust property on the tenth day following the foreclosure sale, Stuart waived any benefit under § 70-27-104, MCA, to which he might otherwise have been entitled. We conclude, therefore, that Stuart was not entitled to notice to vacate under § 70-27-104, MCA. On that basis, we hold that the District Court did not err in granting summary judgment to the Bank based on its conclusion that Stuart was not entitled to notice to vacate the trust property after the STFA nonjudicial foreclosure sale.

Finally, the Bank raises several matters which do not relate to the issues raised by Stuart in his appeal. First, the Bank contends that it is entitled to a writ from this Court directing the Sheriff to assist it in obtaining possession of the trust property. The record reflects, however, that the Bank's application for a writ of assistance is still pending before the District Court. Moreover, the cases cited by the Bank in support of its request involve our review of trial court decisions relating to writs of possession. See Fuller v. Gibbs (1948), 122 Mont. 177, 199 P.2d 851; Dodd v. Simon (1942), 113 Mont. 536, 129 P.2d 224. They are not authority for the issuance of a writ of assistance by this Court. For these reasons, we reject the Bank's request that this Court issue a writ of assistance.

13

The Bank also contends that it is entitled to attorney fees incurred in its efforts to gain possession of the property. Its reason for raising this matter is unclear since the record reflects that the District Court already has determined that the Bank is entitled to reasonable attorney fees incurred in its action for possession. Indeed, the Bank has responded to the court's directive to submit a memorandum of costs and affidavit of attorney fees. Stuart's notice of appeal merely short-circuited the District Court's ability to hold a hearing on the amount of attorney fees to be awarded. Stuart did not, however, appeal the Bank's entitlement to attorney fees and, therefore, the District Court's determination of that issue will become final when remittitur issues on this opinion.

Affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

14

December 10, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

William A. Squires, Randall C. Lester
Matteucci, Falcon, Squires & Lester
Box 149
Great Falls MT  59403-0149

Greg A. Luinstra
LUINSTRA & SEMANSKY
P.O. Box 3267
Great Falls MT  59403-3267

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
Deputy