137 P.3d 429

**FEDERAL HOME LOAN MORTGAGE CORPORATION, Plaintiff–Respondent,**

v.

**Gary R. APPEL and Linda L. Appel, husband and wife, and all other residents designated as John Does I–X, Defendants–Appellants.**

No. 31760.

Supreme Court of Idaho,
Coeur d'Alene, April 2006 Term.

May 25, 2006.

Starr Kelso Law Office, Chtd., Coeur d'Alene, for appellants.  Starr Kelso argued.

Ringert Clark, Chtd., Boise, for respondent.  Laura E. Burri argued.

JONES, Justice.

At issue in this appeal is the validity and finality of a trustee's sale of appellants' real property.  The successful bidder at the sale, a company called Mortgage Electronic Registration Systems, Inc. (MERS), filed a complaint for ejectment against the appellants.  MERS deeded the property to Federal Home Loan Mortgage Co. (Fed Home), which was substituted as plaintiff.  The district court entered summary judgment in Fed Home's favor and ordered the appellants off the property.  They appealed.  We vacate the order in part and remand for further proceedings.

### I.

The property from which MERS sought to eject the appellants is located in St. Maries.  In 2001, the appellants borrowed nearly $200,000 from Greenpoint Mortgage Funding, Inc. They gave Greenpoint a promissory note, as well as a deed of trust against the property to secure payment of the note.  The deed of trust listed Greenpoint as the lender and MERS as the beneficiary.  The appellants fell behind on their payments and foreclosure proceedings were initiated.  The sale was scheduled to take place in St. Maries on June 26, 2003.

The day before the scheduled date of the trustee's sale, the appellants filed a Chapter 7 bankruptcy.  With the automatic § 362 stay in place, the property could not be sold.  So, on June 25, 2003, the trustee faxed the title company a letter requesting that the foreclosure sale be rescheduled for July 24, 2003.  According to the trustee, the rescheduled sale date was announced at the time and place of the original sale.  It is unclear whether notice of this rescheduling was provided to the appellants either in writing or by

publication or posting, but the appellants deny having ever received notice of the rescheduling. July 24 came and went, and the stay remained in effect. On that date, the trustee sent the title company a fax requesting that the sale be postponed until August 22, 2003. The trustee asserts that the rescheduled date was announced at the time and place of the initial rescheduled sale. Again, the record does not disclose whether notice was provided to the appellants, but they deny having received notice of this second rescheduling. On August 8, 2003, and upon the parties' stipulation, the bankruptcy court vacated the automatic stay and allowed Greenpoint, or its successors or assigns, to foreclose on the property. Neither the stipulation nor the bankruptcy court's order lifting the stay identifies a date on which the sale was to occur.

With the stay lifted, the trustee's sale was held on August 22 and MERS was the successful bidder. MERS's bid was a credit bid. In the sense it is used in this case, a credit bid means that the holder of the note bids up to the amount of money due it by the debtor, thereby extinguishing the debtor's debt to the extent of the bid.

Very shortly after the sale, MERS deeded the property to Fed Home, which was unsuccessful in its non-judicial attempts to eject the appellants and possess the property. MERS filed an ejectment action and the district court subsequently granted its motion to amend its complaint and substitute Fed Home as the real party in interest. Fed Home then moved for summary judgment. The appellants defended the motion, claiming that the credit bid was not proper under Idaho's statutes governing property purchases at a trustee's sale. They also contended that the sale suffered fatally from procedural deficiencies, specifically that the notice provisions set forth in I.C. § 45–1506A were not met. After a hearing the district court issued an order granting Fed Home's motion and ordering the appellants off the property.

## II.

We are concerned in this appeal with three issues: (1) whether a credit bid like the one used here satisfies the requirements of I.C. § 45–1506(9); (2) whether the trustee's sale in this case complied with the notice requirements set forth in Title 45, Chapter 15 of the Idaho Code; and (3) whether, even if the trustee's sale did not comply with the aforesaid notice requirements, Fed Home is entitled to the conclusive effect of a sale and recording of the trustee's deed as a good faith purchaser for value under I.C. §§ 45–1508 and 45–1510. As the district court disposed of this case on summary judgment, it is according to that standard of review, set forth in Idaho R. Civ. P. 56(c), that we will proceed.

### A.

■ The appellants argue first that a credit bid does not satisfy the statutory requirements for purchasing property at a trustee's sale. They say that nowhere in our statutes can the phrase "credit bid" be found. They point out that I.C. § 45–1506(9) speaks to paying "purchase money" and calls for the purchaser to "pay the price bid." They assert that cash is required for a valid bid and that the bid in this case fails the statutory requirements. The appellants are wrong.

The district court ruled that the credit bid satisfied the statutory requirements for purchasing property at a trustee's sale. The court noted that the issue had not been decided in Idaho, but observed that courts in several jurisdictions, interpreting statutes that required bids for cash, had nevertheless held that credit bids satisfied the statutory requirements. For instance, in *Rocky Mountain Bank v. Stuart*, 280 Mont. 74, 928 P.2d 243 (1996), the defendant executed a trust indenture on his residential property to secure payment of an obligation to the plaintiff bank. 928 P.2d at 245. After the defendant defaulted, the bank commenced nonjudicial foreclosure proceedings under Montana's statutes. *Id.* The bank was the only bidder at the sale and it purchased the property with a credit bid. *Id.* The defendant refused to vacate the property and suit for possession was commenced. *Id.* The defendant claimed that the credit bid was not a cash sale, which was required by statute. *Id.* The trial court did not buy this theory and, on appeal, nei-

ther did the supreme court. The supreme court noted that a credit bid was not a credit sale, the difference being that in the latter the bidder would be permitted to pay at a later time, as would be the case "if the bid were in the form of a note or other instrument pursuant to which either a lump sum payment or payment by installments over time would be made in the future." *Id.* at 247. But the bank was simply bidding the amount due it, and the court held that the bank's application of its bid to the outstanding debt constituted payment of the price bid in cash. *Id.*

The district court also cited *Surety Sav. & Loan Ass'n v. Nat'l Automobile & Cas. Ins. Co.*, 8 Cal.App.3d 752, 87 Cal.Rptr. 572 (Cal. Ct.App.1970), wherein the Court of Appeals of California held that the difference between the creditor-plaintiff bringing cash for the full price to the sale and simply making a credit bid was merely one of form, and *McClure v. Casa Claire Apartments, Ltd.*, 560 S.W.2d 457 (Tex.Ct.App.1977), in which the Court of Appeals for Texas held that "[c]rediting the bid against the note has been found to be equivalent to a cash sale." 560 S.W.2d at 461. The appellants contend that these cases are "clearly a distinct minority," but they have provided no authorities to the contrary.

█ The principle articulated in the above-cited cases is compatible with I.C. § 45–1506 and, indeed, it makes a good deal of practical sense. There is no reason why the holder of the deed of trust note should not be able to purchase the property at a trustee sale by bidding in all or part of the amount owing pursuant to the note. After all, the holder of the note is the party to be benefited by the sale. It makes no sense to require the note holder to bring cash to the sale in order to pay himself. His bid, if successful, immediately reduces or eliminates the debtor's obligation. We hold that where the holder of the deed of trust note is the bidder, crediting the bid against the note is the equivalent of a cash sale. The district court properly held that the credit bid here complied with the statutory requirements.

**B.**

█ The appellants next contend that notice of the rescheduled sale was not given as required by I.C. § 45–1506A. Fed Home responds that all of the requirements of I.C. § 45–1506B *were* complied with by the time the appellants filed for bankruptcy, and therefore no further notice was required after the first rescheduling. *See* I.C. § 45–1506B(3). But the appellants argue that once their bankruptcy was filed and the original June sale could not occur, I.C. § 45–1506A, *not* I.C. § 45–1506B was the statute with which MERS had to comply.

So which is it? Generally speaking, a foreclosure sale may be postponed in one of three ways. First, I.C. § 45–1506(8) provides:

> The sale shall be held on the date and at the time and place designated in the notice of sale or notice of rescheduled sale as provided in section 45–1506A, Idaho Code, unless the sale is postponed as provided in this subsection or as provided in section 45–1506B, Idaho Code, respecting the effect of an intervening stay or injunctive relief order.

Section 45–1506A(1) provides:

> In the event a sale *cannot be held at the time scheduled* by reason of automatic stay provisions of the U.S. bankruptcy code (11 U.S.C. [§ ]362), or a stay order issued by any court of competent jurisdiction, then the sale may be rescheduled and conducted following expiration or termination of the effect of the stay in the manner provided in this section.

(Emphasis added.) The notice requirements in I.C. § 45–1506A are much like those in I.C. § 45–1506, requiring service of notice and publication. *See* I.C. § 45–1506A(2)–(4).

Section 45–1506B(1) applies when a stay has been lifted prior to the date of a scheduled sale:

> If a stay as set out in subsection (1) of section 45–1506A, Idaho Code, which would otherwise have stopped a foreclosure sale *is terminated or lifted prior to the date of sale,* then any person having a right to reinstate the deed of trust pursuant to subsection (12) of section 45–1506,

Idaho Code, may request the trustee to postpone the sale for a period of time which shall allow at least one hundred fifteen (115) days to elapse from the recording of the notice of default to the rescheduled date of sale exclusive of the period of time during which such stay was in effect.

(Emphasis added.) The notice requirements in this section are substantially less burdensome. Subsection (3) of this statute provides:

If the foreclosure has proceeded in compliance with all requirements of subsections (2) through and including (6), of section 45–1506, Idaho Code, prior to the intervention of the stay, then at the time appointed for the original sale, the trustee shall announce the date and time of the rescheduled sale to be conducted at the place originally scheduled and no further or additional notice of any kind shall be required.

So, if no bankruptcy is ever filed and no stay intervenes, postponement proceeds according to § 45–1506(8); if a stay is in effect on the date of a scheduled sale, postponement proceeds according to § 45–1506A; and if a stay has been lifted before the scheduled sale date, then postponement proceeds according to § 45–1506B. In this case, the stay was in effect on the date of the original June sale and was not lifted until August 8— after the rescheduled sale and before the actual sale.

■ Accordingly, to reschedule the first sale, rather than simply announcing the new

date and time of the sale on the date of the original sale as the trustee did and as I.C. § 45–1506B would allow if the stay were lifted prior to the date of sale, the trustee was required to follow the notice provisions in § 45–1506A. The appellants did not show up to hear the rescheduling announcements and, in affidavits opposing Fed Home's motion for summary judgment, the appellants denied having personal knowledge of the sale being rescheduled to July 24 or August 22.[1] And why would they have shown up at the time and place of the initially scheduled sale to hear a rescheduling announcement when they knew the sale was stayed by the bankruptcy filing? Not having any reason to be at the first rescheduling, they would have had no reason to know of the second sale date or of the second rescheduling.

The district court ruled that "the more specific provisions of I.C. § 45–1506B(3) apply, allowing the trustee to simply announce the date and time of resale without further notice if the requirements of sections 45–1506(2) through 45–1506(6) have already taken place."[2] In light of our above discussion, this was incorrect. Fed Home argued it complied with § 45–1506B, but did not show it complied with § 45–1506A. Thus it is unclear (and doubtful) that § 45–1506A was complied with. Because the district court applied the incorrect standard (i.e., ruling § 45–1506B, not § 45–1506A, applied), summary judgment on this issue was improper.

**C.**

Fed Home argues, however, that "[i]rregardless" of whether the proper statutory

---

**1.** No argument was made that the appellants had actual notice of the July or August sales. Both the August 8 stipulation to remove the stay and the order removing the stay contemplated foreclosure proceedings would go forward but neither identified a date on which the property would be sold. Even if the appellants did have notice of the sale, it may not have made a difference. We are dealing here with nonjudicial trust deed foreclosure. The procedures to foreclose on trust deeds outside of the judicial process provide the express-lane alternative to foreclosure in the judicial system and strip borrowers of protections embedded in a judicial foreclosure. As our Court of Appeals has correctly observed, strict compliance with the notice provisions is required. *See Security Pacific Finance Corp. v. Bishop,* 109 Idaho 25, 28, 704 P.2d 357, 360

(1985) (quoting *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix,* 118 Ariz. 473, 578 P.2d 152, 156 (1978)).

**2.** The court noted that the trustee had complied with § 45–1506(2) through (6). This does not seem to be disputed. The court apparently viewed § 45–1506B(3) as a stand-alone provision. It noted that a "person having a right to reinstate the deed of trust pursuant to subsection (12) of section 45–1506, Idaho Code, may request the trustee to postpone the sale for a period of time," I.C. § 45–1506B(1), but that no such person had done so. Therefore, the court skipped to subsection (3) and determined that it had been complied with.

notice requirements were complied with, the sale is final under I.C. §§ 45–1508 and 45–1510. It is "too late," Fed Home says, for the appellants to object to the sale; the appellants should have objected before the foreclosure sale occurred. Idaho Code § 45–1508 provides: "[a]ny failure to comply with the provisions of section 45–1506, Idaho Code, shall not affect the validity of a sale in favor of a purchaser in good faith for value at or after such sale, or any successor in interest thereof." Section 45–1510 provides that when the trustee's deed is recorded properly, the recitals in the deed and the affidavits required in § 45–1506(7) are conclusive in favor of a purchaser in good faith for value. Fed Home contends it is a purchaser in good faith and thus gained the rights conferred in §§ 45–1508 and 45–1510. This argument flows, however, from Fed Home's assertion that it complied with § 45–1506B—recall, the company does not assert that it complied with § 45–1506A. By arguing that § 45–1506B was complied with, Fed Home seems to tacitly admit it knew that the requirements in § 45–1506A were not. While the issue was raised in the parties' memoranda on summary judgment, the district court's written decision does not address this issue.

▪▪ Though this Court has not ruled on such a question, status as a bona fide purchaser or a purchaser in good faith, at least in the context of a nonjudicial foreclosure sale, is generally not available where a purchaser is on inquiry notice of a potential defect of statutory notice provisions. *See Rosenberg v. Smidt*, 727 P.2d 778, 784 (Alaska 1987) (under Alaska statute, purchasers at nonjudicial foreclosure sale could not claim bona-fide purchaser status where they were on inquiry notice because deed did not recite specifics of trustee's compliance with statutory notice requirements); *see also* Grant S. Nelson and Dale A. Whitman, *Real Estate Finance Law*, § 7.20 at 671 (West 2002) (bona fide purchaser status may be available to purchaser unrelated to mortgage where purchaser has no actual knowledge of defects, is not on reasonable notice from the instruments that defects have occurred, and the defects are not such that a person attending the sale exercising reasonable care would be aware of the defect); *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940 (Tex.Ct.App. 1988); *Little v. CFS Service Corp.*, 188 Cal. App.3d 1354, 233 Cal.Rptr. 923 (Cal.Ct.App. 1987).[3] If MERS knew the § 45–1506A requirements were not complied with, it had actual knowledge that such requirements were not met and it cannot claim to be a good faith purchaser for value. If that is the case, then Fed Home cannot benefit from the shelter rule and may not be entitled to the protections bestowed by §§ 45–1508 or 45–1510. The district court did not address this issue, so further fact-finding is necessary and summary judgment was improper. We see no merit in Fed Home's argument that the appellants, who were entitled to receive notice of a sale, yet did not and were not otherwise aware of the sale, should have contested the lack of notice *before* the sale.

### III.

The district court's order is affirmed insofar as it holds the credit bid submitted by

---

3. The subsections relating to sale postponement in sections 45–1506 and 45–1506A contain mechanisms to ensure the notice requirements are complied with. For example, § 45–1506(7) requires that an affidavit of mailing notice of sale and an affidavit of posting and publication of notice of sale, as required in § 45–1506(6), must be recorded in the mortgage records of the county or counties in which the property sits. In the event that a sale is postponed because a stay prohibits the sale, § 45–1506A(4) requires the trustee to make an affidavit stating he or she has complied with subsections (2) and (3) of § 45–1506A, to make this affidavit available for inspection at the time of the rescheduled sale, and to attach or incorporate the affidavit to the trustee's deed. But § 45–1506B allows the possibility that an unwitting buyer who is present at a scheduled sale may be told, erroneously, that the postponed sale is being rescheduled pursuant to that section. Unlike sales postponed under §§ 45–1506 or 45–1506A, which require recorded affidavits certifying compliance with the notice requirements, a sale postponed under § 45–1506B is simply rescheduled at the original sale and no further notice of any kind is necessary. Thus, a bidder who is told at a scheduled sale that the sale is being postponed and rescheduled pursuant to § 45–1506B(3) has no reason to inquire whether the trustee is following the proper postponement statute and thus may have no knowledge that the actual notice provisions were not complied with.

MERS was compliant with statutory requirements but is vacated in all other respects and the case is remanded for proceedings consistent with our opinion. Costs are awarded to the appellants.

Chief Justice SCHROEDER, Justices EISMANN and BURDICK, and Judge REINHARDT, III, Pro Tem. concur.