J. JONES, J.,
specially concurring.
I concur in the Court’s opinion even though it produces a harsh result for the Davidson Trust. Such a result could certainly have been anticipated because the bids submitted by Davidson Trust substantially exceeded the total amount owing on the obligations secured by the two deeds of trust. As noted in the opinion, a credit bid exceeding the trust deed obligation has a chilling *508 effect on the trustee’s ability to obtain the maximum amount of recovery for the debt- or’s property. Allowing a beneficiary to submit a credit bid in excess of the debtor’s obligation would give the beneficiary an unwarranted competitive advantage over cash bidders who might be willing to pay more than the debtor’s obligation. Such a practice would also deprive the debtor of any excess sale proceeds that might otherwise be available for his or her benefit. A credit bid is designed to allow the beneficiary to bid up to the total owing on the trust deed obligation without having to produce cash in that amount at the trust deed sale, not to allow the beneficiary to avoid a competitive trustee’s sale.
In Federal Home Loan Mortgage Corp. v. Appel, 143 Idaho 42, 45, 137 P.3d 429, 432 (2006), we described the purpose of a credit bid as follows:
There is no reason why the holder of the deed of trust note should not be able to purchase the property at a trustee sale by bidding in all or part of the amount owing pursuant to the note. After all, the holder of the note is the party to be benefited by the sale. It makes no sense to require the note holder to bring cash to the sale in order to pay himself. His bid, if successful, immediately reduces or eliminates the debtor’s obligation. We hold that where the holder of a deed of trust note is the bidder, crediting the bid against the note is the equivalent of a cash sale.
It is clear that the upper limit of a credit bid is the amount owing on the obligation secured by the trust deed. If the beneficiary were permitted to bid in excess of the amount owing on the obligation secured by the trust deed, without having to pay the excess in cash, there would be no need for a competitive auction — the beneficiary would always be able to outbid a cash purchaser.
A trust deed beneficiary should not submit a bid in excess of the amount owing on the trust deed obligation without expecting to have to pay cash for the excess. Had a third party submitted bids identical to those submitted by the Davidson Trust, the third party would not have been excused from paying the total amount of the two bids. There is no reason to treat Davidson Trust any differently. On the other hand, a trustee should not accept a beneficiary’s credit bid exceeding the trust deed obligation. Idaho Code § 45-1506(9) requires the purchaser to pay the price bid at the time of sale and provides for delivery of the trustee’s deed upon receipt of payment by the trustee. The trustee is provided with options in the event of a refusal by the purchaser to pay the purchase money. Since a credit bid is limited to the amount of the obligation secured by the trust deed, the portion of a bid exceeding that amount must be paid in cash. Where the beneficiary fails to pay the excess amount in cash, he has failed to pay the price bid and the trustee, having failed to receive full payment, delivers the trustee’s deed at his potential peril.
It is not entirely clear how these sales went awry. The record contains an affidavit executed by the vice president and trust officer of Davidson Trust, attached to which are two written credit bids that were apparently furnished to the trustee. The affidavit indicates that both bids were to be submitted and that they were to be submitted in the order in which the trustee actually conducted the two sales — DOT No. 2 being brought up for sale at 10:00 a.m. on February 24, 2005, and DOT No. 1 being brought up at 10:30 a.m. Thus, it appears the trustee conducted the sales as requested by Davidson Trust.
It is unknown why Davidson Trust did not attempt to handle the matter in a single sale by foreclosing DOT No. 2, including the amount owing on the obligation secured by DOT No. 1. Or, it could have foreclosed both trust deeds, seeking only the amount owing pursuant to each. Nor is it known why the trustee did not call attention to the fact that the credit bids exceeded the total available credit. The bids, as presented to and accepted by the trustee, appear destined to produce the unfortunate result actually obtained here.
What this case illustrates is that the beneficiary should be scrupulous in determining the amount owing pursuant to the obligation^) secured by the deed(s) of trust[4] *509 and, where the beneficiary does not personally attend the sale, should provide clear-cut instructions to the trustee. The case also illustrates that the trustee should pay attention to the amount owing to the beneficiary on the obhgation(s) secured by the trust deed(s) and make sure that any credit bid submitted by the beneficiary does not exceed that amount, unless the beneficiary produces cash to make up the difference.

. The written credit bids also contain some overlap. Both bids included the delinquent taxes on *509 parcel No. 3 in the amount of $1,783.36, the $5,000 amount related to item (g) of the Agreement, and attorney fees and costs in the amount of $1,865.40. While it isn't entirely clear, it appears that these duplicate items further inflated Davidson Trust's bid to its current detriment.