*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

RONALD A. BROOKS,                    )
                                     )   Supreme Court No. S-14181
                    Appellant,       )
                                     )   Superior Court No. 4FA-09-01303 CI
        v.                           )
                                     )   O P I N I O N
TIMOTHY HOLLAAR,                     )
                                     )   No. 6761 - March 22, 2013
                    Appellee.        )
                                     )
_____  )

> Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.
>
> Appearances: James M. Hackett, Law Office of James M. Hackett, Fairbanks, for Appellant. Shelby B. Mathis, Oravec Law Group, LLC, Fairbanks, for Appellee.
>
> Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]
>
> MAASSEN, Justice.

## I.      INTRODUCTION

A jury found Ronald Brooks liable to his former brother-in-law, Timothy Hollaar, for the full amount of loans that had been memorialized by four promissory notes. On appeal, Ronald argues that the trial court erred in allowing Timothy to recover more than nominal damages, since Timothy was not the real source of the money and intended to pay any recovery to the family members who supplied it. Ronald also argues that the trial court erred by failing to make special findings of fact on Timothy's

promissory estoppel claim.  Finally, Ronald argues that the trial court erred in naming Timothy the prevailing party.  Because Timothy could lawfully sue to recover the loans, the promissory estoppel claim was properly submitted to the jury, and Timothy was the prevailing party, we affirm the judgment.

## II.    FACTS AND PROCEEDINGS

Ronald Brooks and Carmen Hollaar were married in 1989.  In 1991, as tenants by the entirety, they purchased a parcel of real property on Goldstream Road in Fairbanks.  For more than a decade, they lived in a trailer on the property with their children.

Between late 2005 and early 2006, Timothy Hollaar, Carmen's brother, loaned Ronald and Carmen a total of $184,439 to be used for the construction of a permanent residence on the Goldstream property.  The funds originated from Leroy, Ilean, and Gwen Hollaar (the Hollaars) — Carmen and Timothy's father, mother, and sister.  The Hollaars transferred the funds to Timothy's bank account, and Timothy in turn transferred the funds to Ronald and Carmen.

These loans were memorialized in three promissory notes dated September 17, 2005, January 5, 2006, and February 13, 2006, and signed by both Ronald and Carmen.  The notes recite that the loans were to be repaid to Timothy on December 31, 2006, or upon conveyance of the property, whichever came first.

Ronald and Carmen separated in 2005, and Ronald left the Goldstream property. Timothy continued to provide money to Ronald and Carmen between February and July 2006.  Again the Hollaars were the source of these additional funds, which totaled $81,991.  This amount was memorialized in a fourth promissory note dated August 31, 2006, and signed only by Carmen.  In December 2006, Carmen, but not Ronald, signed a deed of trust which purported to secure all four promissory notes with the Goldstream property.

In January 2008, having not yet been repaid on any of the promissory notes, Timothy foreclosed on the Goldstream property pursuant to his deed of trust. He purchased the property at the foreclosure sale for a credit bid of $269,226.[1] Ronald and Carmen divorced in December 2008. The divorce decree awarded the Goldstream property to Ronald, subject to any liens or encumbrances that Timothy had against it. Ronald assumed all the debt to Timothy related to the property, to the extent the debt was "based on Promissory Note(s) upon which Ron is personally liable."

Timothy brought suit against Ronald in March 2009, asking that the superior court award him half the Goldstream property and half its value, the full value of the property, or all the money owed on the four promissory notes. The superior court, in ruling on an early motion to dismiss, held that neither Ronald nor Carmen had the right to unilaterally convey an interest in the Goldstream property since it was their marital residence. The court held that Carmen's deed of trust was therefore void and that Timothy owned no interest in the Goldstream property despite his ostensible purchase of it at the foreclosure sale. The court held that Timothy was simply an unsecured creditor and that he could sue on the promissory notes.

After a jury trial, Ronald was found liable to Timothy on the first three promissory notes, those Ronald had signed, under a contract theory. As for the fourth promissory note, the one signed only by Carmen, the jury answered "Yes" to four questions on the verdict form asking whether the elements of promissory estoppel were

---

[1]     "[A] credit bid means that the holder of the note bids up to the amount of money due it by the debtor, thereby extinguishing the debtor's debt to the extent of the bid." *Fed. Home Loan Mortg. Corp. v. Appel*, 137 P.3d 429, 431 (Idaho 2006). We observe that the promissory notes total $266,430, and that the superior court, in denying a motion to dismiss, recited that figure as the amount of Timothy's credit bid. The difference is not material to the issues on appeal.

met[2] and on that basis found Ronald liable on that note as well. In light of a dispute as to whether the jury or the court should decide the fourth question about promissory estoppel, i.e., whether justice required enforcement of the promise, the court stated on the record that it "agrees with the jury in all respects, but agrees that the jury having found the first three [elements of promissory estoppel], that justice requires enforcement of the defendant's promise." The court entered judgment in Timothy's favor on all four promissory notes and awarded him attorney's fees as the prevailing party.

Ronald appeals. He argues that because Timothy had no economic interest of his own in performance of the notes, he could sue for nominal damages but not full contract damages. He contends that the trial court erred by not instructing the jury on this argument and by failing to grant his motion for directed verdict and for judgment notwithstanding the verdict based on this argument. He also argues that the trial court violated Alaska Civil Rule 52(a) when it failed to make specific findings as to Timothy's promissory estoppel claim and Ronald's unclean hands defense. Finally, Ronald argues that the trial court erred by finding that Timothy was the prevailing party for purposes of the award of attorney's fees.[3]

---

[2]     The four questions for the jury on this issue were: "1) Did the defendant make a promise to the plaintiff regarding any money advanced relating to promissory note number four? . . . 2) Did the defendant expect or should the defendant reasonably have expected that the promise would cause the plaintiff to act? . . . 3) In reliance on the defendant's promise, did the plaintiff act by advancing money? . . . [and] 4) Does justice require enforcement of the defendant's promise?"

[3]     Ronald argued in his brief that the trial court also erred by failing to instruct the jury on Ronald's unclean hands defense. The record shows that the jury was in fact given such an instruction, which Ronald's counsel conceded at oral argument. We therefore consider the point no further.

## III. STANDARD OF REVIEW

We review questions of law de novo, using our independent judgment.[4] We review the superior court's factual findings for clear error.[5] We review jury instructions de novo.[6] We review the superior court's prevailing party determination and award of attorney's fees for an abuse of discretion.[7]

## IV. DISCUSSION

### A. Timothy Is Entitled To Recover Contract Damages From Ronald.

Ronald argues that Timothy cannot recover more than nominal damages because he admitted both that he had received the loan funds from the other members of his family, the Hollaars, and that he planned to give them any recovery from this lawsuit in repayment. According to Ronald, these admissions prove that his promise to pay Timothy was merely what the Restatement calls a "gift promise" and that Timothy had no economic interest in its performance; under this theory it was the other Hollaars who were the third-party "donee beneficiaries" of the promise and had the right to sue for its breach.[8] The Restatement observes that "[i]f the promisee has no economic interest in the performance, as in many cases involving gift promises, the ordinary remedy of damages for breach of contract is an inadequate remedy, since only nominal damages can be

---

[4]    *Jacob v. State, Dep't of Health & Soc. Servs.*, *Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[5]    *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008).

[6]    *Sowinski v. Walker*, 198 P.3d 1134, 1160 (Alaska 2008).

[7]    *Fernandes v. Portwine*, 56 P.3d 1, 4-5 (Alaska 2002).

[8]    RESTATEMENT (SECOND) OF CONTRACTS § 302 cmt. c (1981).

recovered," and "[i]n such cases specific performance is commonly appropriate."[9] Citing this Restatement provision, Ronald contends that Timothy, as merely the gift promisee, can only recover nominal damages or bring suit for specific performance, an equitable remedy.

But Timothy's economic interest in payment of the loans is obvious: he is the named payee on the promissory notes. Ronald and Carmen promised to repay him the money. Whether the funds came to Timothy originally from a bank or from other family members, it is undisputed that he is the one who transferred the funds to Ronald and Carmen and who secured, by contract, the right to repayment. Timothy can sue to collect the loans.

We also reject the argument that the Hollaars are properly characterized as donee beneficiaries of the loan contract with Ronald and Carmen. The Hollaars had a separate legal relationship with Timothy, either creditor-borrower or principal-agent. If the Hollaars are viewed as Timothy's creditors, they loaned him money in exchange for his promise to pay them back when he was repaid by Ronald and Carmen. We have recognized the "established rule . . . that 'a contract to provide a borrower with funds to pay his debts does not give creditors a right to enforce the contract as third party beneficiaries.' "[10] A creditor can sue to enforce the contract only where the payor promises to make payment directly to the creditor.[11] Ronald and Carmen promised to pay Timothy, not the Hollaars. Although the Hollaars ultimately benefitted from the loans'

---

[9]     *Id*. at § 305 cmt. a.

[10]     *Alaska Cont'l, Inc. v. Trickey*, 933 P.2d 528, 533 (Alaska 1997) (quoting *Exch. Bank & Trust Co. v. Lone Star Life Ins. Co.*, 546 S.W.2d 948, 950 (Tex. Civ. App. 1977)).

[11]     *Id.*

repayment, they were not intended beneficiaries of the promises made by Ronald and Carmen and could not have sued to enforce those promises.

We could alternatively view Timothy as the Hollaars' agent for the purpose of making and collecting on the loans; that is how Timothy's complaint characterizes his role, and Ronald urged the court to deem this to be judicially admitted. If Timothy is the Hollaars' agent, the Hollaars are not third-party beneficiaries of the loan to Ronald but instead are the actual parties in interest.[12] But this does not mean Timothy may not sue for damages. An agent who is the promisee on a contract between his principal and a third party may maintain an action for breach of contract in his own name.[13] Even if Timothy is the promisee on the loans only as the Hollaars' agent, he has the right to sue for repayment. The Restatement observes that "[i]f the agent brings an action in his own name but on account of the principal, he sues as a fiduciary and hence he recovers the full measure of damages although he is personally caused no pecuniary loss by the failure of the third person to perform."[14] Thus, under an agency theory, too, Timothy was entitled

---

[12] RESTATEMENT (SECOND) OF AGENCY § 140 (1958); RESTATEMENT (SECOND) OF CONTRACTS § 2(4) (1981).

[13] RESTATEMENT (SECOND) OF AGENCY § 363 ("An agent who makes a contract on behalf of a principal cannot maintain an action thereon in his own name on behalf of the principal although authorized by the principal to bring suit, *unless the agent is a promisee or transferee.*") (emphasis added); *id.* at § 364 ("A person with whom an agent makes a contract on behalf of a principal is subject to liability in an action brought thereon by the agent in his own name on behalf of the principal *if the agent is a party promisee.*") (emphasis added).

[14] *Id.* at § 364 cmt. k.

to recover full damages regardless of the origins of the funds that were loaned to Ronald and Carmen.[15]

Ronald argues that he will be subject to double liability if Timothy is allowed to recover, because he theoretically will be liable both to Timothy and to the other Hollaars for the same funds. Ronald's fears are unfounded. As discussed above, if the Hollaars are viewed as Timothy's creditors, they have no direct interest in his loans to Ronald and cannot sue to collect them. If Timothy made the loans as the Hollaars' agent, then he sued as their agent and takes the recovery as a fiduciary for the Hollaars, who cannot collect the same funds from Ronald again.

B.     **The Trial Court Was Not Required To Make Specific Findings Of Fact On Timothy's Promissory Estoppel Claim Or Ronald's Unclean Hands Defense.**

1.     **Timothy had the right to a jury trial on his promissory estoppel claim because the relief he sought was legal**.

As noted above, the jury found that all four elements of promissory estoppel existed with regard to the fourth promissory note and therefore found Ronald liable on the note despite the fact that it had been signed only by Carmen. The trial court made no separate factual findings on the issue but stated, on the record, that it agreed with the jury's decision "in all aspects" and that justice demanded enforcement of Ronald's promise. Ronald contends that promissory estoppel had to be decided by the court, not the jury; that the jury was merely advisory on this issue and Timothy is judicially estopped from arguing otherwise; and that the court's oral statement that it agreed with the jury's verdict fails to satisfy the requirement of Civil Rule 52(a) that "the court shall

---

[15]     Ronald also argues that Timothy is not a "holder in due course" of the promissory notes and therefore holds them subject to various defenses. But Timothy has not argued that he *is* a holder in due course, and Ronald's defenses are unavailing whether Timothy is a holder in due course or not.

find the facts specially and state separately its conclusions of law thereon" in any action tried with an advisory jury.

Advisory juries are addressed by Civil Rule 39(c), which allows the trial court to empanel one in an action "not triable of right by a jury." If Timothy's promissory estoppel claim was "triable of right by a jury," then the jury could not have been advisory; the claim was properly presented to the jury to decide; and the court's post-verdict adoption of the jury's findings, though undoubtedly prudent for purposes of appellate review, was unnecessary, making irrelevant the requirement of special findings by the court under Civil Rule 52(a).

A civil litigant's right to a jury depends on the relief sought. "[W]here equitable relief is sought . . . this court has disallowed the right to a trial by jury. But, where damages or other relief at law is sought this court has allowed a jury trial."[16] We treat claims sounding in equity as legal when the litigant seeks a legal remedy.[17] In this case Timothy relied on promissory estoppel, an equitable doctrine, but sought money damages. He therefore had a right to have a jury decide the claim, and there was no need for additional findings by the trial court.

Ronald asserts that Timothy asked the trial court to make an independent determination of the fourth element of the promissory estoppel doctrine and is now

---

[16]  *Keltner v. Curtis*, 695 P.2d 1076, 1079 n.5 (Alaska 1985) (internal citations omitted).

[17]  *Henrichs v. Chugach Alaska Corp.*, 250 P.3d 531, 539 (Alaska 2011) (finding no error in trial court's failure to instruct jury on equitable defenses where plaintiff sought legal remedy of damages for breach of fiduciary duty); *cf. Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1092 (Alaska 2002) (holding that in an action by a village corporation which sought, in part, the removal of a director, the jury verdict on this issue was merely advisory and the trial court should have entered special findings as required by Civil Rule 52(a)).

judicially estopped from arguing that the jury was anything other than advisory on this issue. "Judicial estoppel bars 'a party from contradicting previous declarations made during the same or an earlier proceeding if the change in position would adversely affect the proceedings or constitute a fraud on the court.' "[18]

In the pretrial exchange on which Ronald relies for this argument, however, Timothy's counsel asked that the court "let the jury hear this entire case." He requested that the jury be instructed on promissory estoppel and that the court make a determination, post-verdict, as to whether "it's going to accept the jury verdict," all with the goal of allowing the parties to "address . . . after the fact" whether promissory estoppel was properly for the court or the jury. The court expressly adopted this prudent approach:

> [H]andling it that way will both preserve any objection [Ronald's counsel] has and also have a complete record, so whatever the answer to that question is — I mean, the Supreme Court hasn't answered it yet — they can direct an outcome because all the data will be in for them to do either outcome.

In later debate over jury instructions, Timothy's counsel repeated his understanding "that everything goes to the jury and [the court] also . . . [was] going to, you know, make a determination independently." The court observed that this was "the safest course." When Ronald's counsel argued that there was "no right to a jury trial at all on promissory estoppel," the court asked Timothy's counsel again whether he was contending that "the jury should decide number 4, whether justice requires enforcement;" Timothy's counsel answered, "I do." Timothy's position was thus consistent throughout: that the jury was to decide the entire claim, with the court making a separate finding of

---

**18**     *Bruce L. v. W.E.*, 247 P.3d 966, 976 n.37 (Alaska 2011) (quoting BLACK'S LAW DICTIONARY 631 (9th ed. 2009)).

the fourth element just in case it was later determined that it was properly for the court, not the jury, to decide. In short, Timothy's counsel never made a "declaration," later contradicted, that could form the basis for judicial estoppel. Timothy is not estopped from contending that all elements of the promissory estoppel doctrine were properly for the jury.

### 2. The trial court was not required to make special findings with regard to Ronald's unclean hands defense.

Ronald also argues that the trial court erred in its handling of his unclean hands defense. 2 Ronald describes the basis of his defense as "Timothy's bad conduct . . . in entering into an illegal and void deed of trust with Carmen" in December 2006, thus clouding title and unduly complicating the property division in the divorce. Ronald argues that Civil Rule 52(a) required the trial court to make special findings of fact when rejecting the unclean hands defense.

We disagree. Rule 52(a) requires the trial court to make such findings only when a party has properly asserted the defense and presented evidence to support it.[19] Ronald did neither. First, unclean hands is an equitable doctrine that bars claims in equity.[20] The promissory estoppel claim against Ronald was a claim at law because it sought legal relief, as explained above,[21] and unclean hands was not available to Ronald as a defense.

Second, Ronald has presented no evidence that would support the defense. "To successfully raise the unclean hands defense under Alaska law, a defendant must

---

[19]     *Henrichs*, 250 P.3d at 540.

[20]     *Shears v. Myers*, 280 P.3d 552, 558-59 (Alaska 2012) (holding that unclean hands is an equitable defense that applies to equitable claims).

[21]     *Gudenau v. Bang*, 781 P.2d 1357, 1363 n.9 (Alaska 1989) (holding that equitable defenses do not apply to claims at law).

show:  (1) 'that the plaintiff perpetrated some wrongdoing'; and (2) 'that the wrongful act related to the action being litigated.' "[22]  In *Henrichs,* the subject of the litigation was "events during the six months in 2004 when Henrichs served as chairman of the board of directors," and we held that alleged wrongdoing in a later board election was not "related to the action being litigated" and therefore did not support the defense.[23]  So too here. Ronald raised unclean hands as a defense to Timothy's attempt to collect on the four promissory notes, the last of which was signed in August 2006, four months before the allegedly wrongful act, the signing of the deed of trust.  When the case went to trial, Timothy's rights under the deed of trust had already been determined; the deed of trust was void, and he was proceeding as an unsecured creditor.  The unclean hands defense was not related to the remaining issue, the enforceability of the earlier promissory notes.

For both of these reasons, the trial court did not err by failing to make special findings on the unclean hands defense.

C.      **The Attorney's Fees Award Was Not An Abuse Of Discretion.**

Finally, Ronald argues that the trial court abused its discretion when it decided that Timothy was the prevailing party.  "A prevailing party is 'one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention.' "[24]  Ronald contends that one of the main issues in the case was the ownership of the Goldstream property, on which he prevailed.

---

[22]      *Henrichs*, 250 P.3d at 540 (quoting *Knaebel v. Heiner*, 663 P.2d 551, 554 (Alaska 1983)).

[23]      *Id*. at 540-41.

[24]      *Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1123, 1126 (Alaska 2012) (quoting *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 721 (Alaska 2003)).

Timothy sued to recover on the debt. Ownership of the Goldstream property was at issue only because Timothy alleged that the property secured the debt. Although it is true, as Ronald observes, that Timothy was found to have no security interest in the property because the deed of trust was void, Timothy nonetheless recovered the total amount of the debt, in excess of the property's value. Even if ownership of the Goldstream property is "a main issue" in the case, as Ronald urges, the trial court did not abuse its discretion when it found on these facts that Timothy was entitled to prevailing-party status.

## V.    CONCLUSION

We AFFIRM the decision of the superior court.